522 A.2d 90

COMMONWEALTH of Pennsylvania

v.

Bob MICHEL, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 17, 1986.

Filed March 6, 1987.

Thomas S. Kubinski, Erie, for appellant.

Before BROSKY, DEL SOLE and JOHNSON, JJ.

BROSKY, Judge:

This is an appeal from an order denying appellant's motion for reconsideration of an order holding appellant, Robert Michel, Sheriff of Erie County, in contempt of court and ordering him to pay a fine of $50.00.

Appellant raises two issues for our consideration: (1) Does the evidence establish that Bob Michel wrongfully and intentionally disobeyed or neglected the lawful process of the court or that he committed a volitional act which he should reasonably have been aware was wrongful? and (2) Does the evidence establish that Bob Michel can be held guilty of criminal contempt of the lawful process of the court for actions committed by one of his employees?

After careful consideration we find that the holding of appellant in contempt of court under the facts of this case was erroneous. Accordingly, we reverse.

The relevant facts as gleaned from appellant's brief and the hearing transcript indicate that: On June 17, 1986, Deputy Sheriff Joseph Cherico, a 19 year veteran of the Erie County Sheriff's Department, was assigned to Courtroom Number 3, Judge Connelly's courtroom, and was made responsible to escort criminal defendants to and from the courtroom for their hearings on that date. A schedule

was given to Cherico by Chief Deputy Dylewski which showed the name of the defendant and the time at which he should arrive in the courtroom. The schedule showed that a person named Lynn Liptak was to be present in Courtroom 3 at 1:30 p.m. and that Gary Frame was to be present at 2:30 p.m. Cherico escorted Liptak to the courtroom at 1:30 p.m. and after the hearing escorted her back to the prison. Cherico testified that he then pulled a schedule from his back pocket and checked to see if another defendant was scheduled at 2:30 p.m. His testimony was that there was no defendant listed on the schedule for 2:30 p.m. Cherico attributed absence of a 2:30 p.m. defendant to the fact that he kept his daily schedules in his pocket and probably accidentally pulled out the wrong daily schedule. Upon his late arrival in Courtroom 3, Cherico stated, "This is not my regular courtroom and I am getting things by bits and pieces."

In any event, neither Cherico nor Gary Frame were present in Courtroom 3 at 2:30 p.m. Judge Connelly's office called Dylewski at the Sheriff's Office and informed her of this fact and Dylewski immediately paged Cherico to the Sheriff's Office. Dylewski began to make alternative arrangements to have the defendant escorted to Courtroom 3. Just as she did so, Cherico arrived at the Sheriff's Office and Dylewski ordered him to go immediately to the prison to pick up Gary Frame and escort him to Courtroom 3. Cherico arrived with Frame at Courtroom 3 at 2:45 p.m.

Two or three minutes after Cherico left the Sheriff's Office for the prison, Bob Michel arrived at the Sheriff's Office and was informed of the problem in Judge Connelly's Courtroom. Michel was told that Cherico was on his way to the prison to escort Frame to the courtroom. Almost simultaneously, an emergency call was made to the Sheriff's Department regarding a possible problem in another courtroom whereupon appellant left to take care of that problem. Upon his return to the Sheriff's Office about half an hour later, Michel found the Court Order holding him in

contempt of court and fining him Fifty Dollars ($50.00) for failure to have Gary Frame in Courtroom 3 at 2:30 p.m.

Prior to this incident, Judge Connelly had complained to Sheriff Michel about tardy appearances by his employees on two different occasions. The first was January 6, 1986 and the second was on March 19, 1986 when a deputy was four minutes late for a hearing. After the March 19, 1986 incident, Judge Connelly informed Sheriff Michel that he would be held in contempt of court the next time one of his deputies was late for a court appearance.

Michel made a departmental reprimand against the deputy who was late on March 19, 1986. He then held a departmental meeting with all of his employees in attendance and informed them that neither he nor the judge would accept late appearances in court by the deputies and that if he were held in contempt of court by the judge they would suffer severe and strict discipline up to the point of termination of their employment.

There were no further late appearances by deputies in Judge Connelly's courtroom until June 17, 1986.

This court has recently defined and expounded upon the concept of criminal contempt and said:

> A direct criminal contempt consists of misconduct of a person in the presence of the court, or disobedience to or neglect of the lawful process of the court, or misbehavior so near thereto as to interfere with the immediate business of the court. The essence thereof is that the misconduct constitutes a direct affront to the dignity and authority of the court so that punishment is required to preserve the efficacy of the judicial system and the administration of justice. *Commonwealth v. Marcone*, 487 Pa. 572, 410 A.2d 759 (1980).

*Fenstamaker v. Fenstamaker*, 337 Pa.Super. 410, 487 A.2d 11 (1985). Additionally, in that case, the court reiterated the four criteria necessary to support a finding of contempt under 42 Pa.C.S. § 4131(2): [1]

1. This section is referenced to by the trial judge and reads:

1. The order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited.

2. The contemnor must have had notice of the specific order or decree; [2]

3. The act constituting the violation must have been volitional; and

4. The contemnor must have acted with wrongful intent.

Prior decisions of this and our Supreme Court have discussed the third and fourth elements of a volitional act with wrongful intent. In *Commonwealth v. Washington,* 466 Pa. 506, 508, 353 A.2d 806, 807 (1976), our Supreme Court stated "there is no contempt unless there is some sort of wrongful intent" and found that a defendant in a criminal action had been improperly held in contempt when he failed to appear in court at the appointed time due to oversleeping. *In re James,* 307 Pa.Super. 570, 453 A.2d 1033 (1982), found a similar result where an attorney was also late due to oversleeping. *Weingrad v. Lippy,* 300 Pa.Super. 76, 445 A.2d 1306 (1982), found a contempt charge reversed when imposed upon an attorney who delivered points for charge to a judge 23 minutes late. The

The power of the several courts of this Commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases:

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

**2.** Appellant argues that the first two criteria enumerated in *Fenstamaker,* above, are not met because there was no court order or decree issued which had been violated. Judge Connelly made quite clear that Michel would be held in contempt if his deputies were tardy with a witness or defendant. We have found no cases which indicate whether the order violated under this section must be a written one. However, similar to our decision in *Weingrad v. Lippy,* 300 Pa.Super. 76, 445 A.2d 1306 (1982), we do not believe there is a need to address this issue as we find that the third and fourth elements have not been met. Note, however, that in *Matter of James,* infra, we upheld the holding of an attorney in contempt for tardiness where there was not present a written order or decree. In that case the presiding panel of this court did not discuss the four enumerated criteria.

evidence indicated that the appellant in that case had instructed his secretary to come in at 8:00 a.m. so the points could be typed and delivered to the court at 9:00 a.m. Upon arriving at court at 9:00 a.m. and finding that his points for charge had not been delivered, appellant phoned his secretary to have her deliver them at once.

In contrast, in *Matter of James*, 323 Pa.Super. 149, 470 A.2d 174 (1984), we affirmed the appellant attorney's contempt for failure to appear in court at an appointed time when the tardiness was a direct result of his decision to see his client in jail. In that case we found the appellant's act volitional, or knowingly made, and found imputed intent by virtue of the substantial certainty that the appellant's action would result in his being tardy.

When the above cited cases are considered, it becomes apparent that the holding of appellant in contempt in this case was improper.

■ Initially, we must say that the holding of an individual in contempt for the actions of a third party would appear inappropriate and, therefore, unsupportable unless the individual conciously directed the third party to act as he did and possessed such authority over the third party that he could compel compliance with the directive. Perhaps then the act of a third party could be imputed to the directing party. However, even then it would be necessary to find wrongful intent. In the present case, the actions of appellant cannot be found either volitional or committed with wrongful intent. Consequently, the four necessary factors for finding an individual in contempt are not met. Sheriff Michel had no knowledge of his deputy's failure to take the criminal defendant to the courtroom, took no steps to prevent the defendant's appearance nor is there evidence of any intent to not present the defendant to the court on time.

■ While this court admires Judge Connelly's desire to run an efficient courtroom, the exercise of greater discre-

tion would have been more appropriate here. We in the judiciary cannot allow our zealousness to protect the court's integrity to lead us down a path of unbridled oppression over those who perform functions for or appear before the court, lest our own actions go further to tarnish and impugn the integrity and reputation of the court than the negligent oversights of those whom we seek to hold in contempt.

■ Under the facts of the present case, we cannot find any indication of volition or willfulness on appellant's part. Indeed, holding the Sheriff in contempt for negligently performing a function for the court seems quite incongruous to us. When a Sheriff performs the function of escorting prisoners or witnesses to and from court, he, not being an adversary or party before the court, would appear to be part of the court itself. Certainly the court cannot be thought of being comprised only of the judge himself. When such an individual acts deliberately and defiantly against the Court, perhaps, he could no longer be thought of as part of the court and the holding of such a person in contempt would seem to be within a judge's discretion. However, when such an individual is held in contempt for an oversight while performing a court function, it is tantamount to the court slapping one hand with the other and makes little sense. Although appellant was fined only fifty dollars, the severe aspect of this case is that Sheriff Michel has had criminal sanctions imposed upon him. We hold that such action cannot be sustained under the circumstances in this case.

For the reasons set forth herein, the order of court denying appellant's motion for reconsideration and ordering appellant to pay a fifty dollar fine is reversed.

Order reversed, jurisdiction relinquished.