J-S11002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHESTER GRODACK, JR. AND MARY CLARE WAGNER, TRUSTEE OF THE MARY CLARE WAGNER TRUST OF MAY 7, 2003 | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| ARIEL LAND OWNERS, INCORPORATED | : : : | No. 2590 EDA 2018 |
| Appellant | : : : | |
| ARIEL LAND OWNERS, INCORPORATED | : : : : | |
| Appellant | : : : | |
| v. | : : | |
| MARY CLARE WAGNER AND CHESTER GRODACK, JR. | : : : | |

Appeal from the Judgment Entered October 2, 2018
In the Court of Common Pleas of Wayne County Civil Division at No(s):
285 – Civil – 2015
44 – Civil - 1996

BEFORE:  SHOGAN, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.: **FILED SEPTEMBER 06, 2019**

Ariel Land Owners, Incorporated ("Ariel") appeals from the judgment entered on October 2, 2018, which incorporated the July 10, 2018 order and opinion granting Mary Clare Wagner and Chester Grodack, Jr.[1] (collectively "the Grodacks") declaratory judgment as to the Grodacks' rights to access and

---

[1] Mary Clare Wagner and Chester Grodack, Jr. are brother and sister.  N.T., 5/30/18, at 62.

use the body of water at issue, Lake Ariel. The order also denied Ariel's petition for contempt and required the Grodacks to pay Ariel any required dues from 2015 through the present and abide by Ariel's rules when using Lake Ariel. The Grodacks have filed a cross appeal. After careful review, we affirm the trial court's judgment.

The trial court set forth the following findings of fact:

1. [The Grodacks] are the owners of a certain property located in Lake Township, Wayne County, Pennsylvania, and described in a 1951 deed, which is recorded in Wayne County Record Book 999 at page 195 and also in Wayne County Record Book 2250 at page 205 (hereinafter "the Grodack Property").

2. The Grodack Property is also known as 195 East Shore Drive, Lake Ariel Township, Wayne County, Pennsylvania.

3. [Ariel] is the owner of certain and various properties located in Lake Ariel Township, Wayne County, Pennsylvania, by deed dated 1964, which are described in Wayne County Deed Book 221 at page 292.

4. [Ariel's] properties include the land at the bottom of Lake Ariel.

5. [Ariel's] ownership, maintenance, control and upkeep of its subject property and the waters of Lake Ariel has been maintained and directed by [Ariel's] Board of Directors, the same being compromised [sic] of twelve (12) members.

6. The Grodacks instituted this action by filing a Complaint on May 21, 2015 seeking declaratory and injunctive relief confirming their right to access and [utilize] the waters of Lake Ariel.

7. [Ariel] countered the Grodacks' Complaint with [a] New Matter and Counterclaim asserting that the issue of the Grodacks' lake rights was adjudicated by the Court in 1997.

8. Following limited discovery in the matter, it was tried before this [c]ourt on May 30, 2018.

- 2 -

9. Amidst the proceedings of this matter, the Grodacks placed a dock and boat on the waters of Lake Ariel in May of 2017 resulting in [Ariel filing] a Petition for Contempt under the 1996 Court matter (hereinafter "the 1996 litigation"). The contempt [petition] was also heard on May 30, 2018.

10. Prior to the bench trial in this matter, counsel for the parties filed the following stipulated and undisputed facts, and as such, this [c]ourt shall adopt the same:

a. [Ariel] is a duly formed corporation existing under and by virtue of the corporation law of the Commonwealth of Pennsylvania.

b. Ariel is the owner of certain property located in Lake Township, Wayne County, Pennsylvania, more fully described in Wayne County Deed Book 221 at Page 292 (hereinafter "the Ariel Property").

c. Ariel acquired the Ariel Property from A.J. Schrader et ux et al by virtue of the aforesaid deed.

d. The Ariel Property includes substantially all of the land beneath Lake Ariel, a 150 acre lake located in the village of Lake Ariel, Lake Township, Wayne County, Pennsylvania.

e. Ariel claims the right to control the use and enjoyment of Lake Ariel.

f. Ariel maintains Lake Ariel.

g. The Grodack Family [has] been the owner[] of two adjacent parcels of land located at 93-95 East Shore Drive, Lake Ariel, dating back to 1951. Plaintiff Mary Clare Wagner, trustee of the Mary Clare Wagner Trust of May 7, 2003, and Plaintiff Chester Grodack, Jr. are currently the titled owners of the property by virtue of the deeds from their deceased mother, more particularly described in Wayne County Record Book 999 at page 195, and also in Wayne County record book 2250, page 205.

h. The Grodack Property consists of two (2) adjacent parcels located at 93-95 East Shore Drive, Lake Ariel, Pennsylvania, 18436.

i. The Grodack Property was previously in the ownership of Chester J. Grodack and Helen M. Grodack, parents of Plaintiffs Chester Grodack, Jr. and Mary Clare Wagner by virtue of a deed dated October 2, 1951, from James F. Snelson, deed dated October 2, 1951, recorded in Wayne County Deed Book 178, page 168 and a deed from James F. Snelson to Helen M. Grodack dated June 12, 1952, and recorded in Wayne County Deed Book 181, page 18.

j. Chester J. Grodack and Helen Grodack conveyed parcel 1 to their son Robert V. Grodack and his wife Elaine Grodack by deed dated August 5, 1977, recorded in Wayne County deed book 339, page 8[,] and eventually through Sheriff sale proceedings[,] the property was conveyed back to Chester J. Grodack and Helen M. Grodack by Sheriff's deed dated July 19, 1984, recorded in Wayne County Deed Book 417, page 893. Chester Grodack and Helen Grodack conveyed Parcel 2 in 1955 to John and Irene Lesso who later … reconveyed the property back to Chester Grodack and Helen Grodack … by deed dated July 8, 1964, and recorded in Wayne County Deed Book 220, page 313.

k. Subsequently, Chester J. Grodack died on November 9, 1990, and title to Parcels 1 and 2 vested solely in his wife Helen M. Grodack who in turn conveyed title to Parcel 1 and 2 to her children, the Plaintiffs herein, Mary Clare Wagner and Chester Grodack, Jr., by deed dated December 16, 1994, which deed is recorded in Wayne County record book 999, at page 195.

l. Helen M. Grodack was the grantor in the aforedescribed deed recorded at Wayne County Record Book 999 at Page 195.

m. The Grodack Property remains in the tenure of the Mary Clare Wagner Trust (hereinafter "the Trust") as

a one-half interest owner and Chester Grodack, Jr. as a one-half interest owner.

n. The interest of the [Grodacks] in the Parcels in question is set forth in the aforementioned deeds and chain of title to the two Parcels in question.

o. Neither of the current deeds of the [Grodacks] contain[s] specific language granting Lake rights in or to the waters of Lake Ariel.

p. The Grodacks have used the waters of Lake Ariel for recreational purposes in all seasons from 1951 continuing forward without permission of Ariel.

q. The Grodack Property is currently occupied by Shane Grodack, son of Plaintiff Chester J. Grodack, Jr., and nephew of Mary Clare Wagner.

r. [The] Grodacks and Ariel were previously involved in litigation in the Court of Common Pleas of Wayne County, Pennsylvania, in matters filed to number 44-CIVIL-1996 and 419-CIVIL-2011.

s. Both matters filed to number 44-CIVIL-1996 and 419-CIVIL-2011 were initiated by Ariel in the form of Actions in Ejectment and Trespass.

t. The 1996 litigation was concluded by way of this [c]ourt's grant of Ariel's Motion for Summary Judgment, same having been entered by the [c]ourt on January 9, 1997. The litigation at 419-CIVIL-2011 was concluded during the pleading stage by Ariel Land Owners filing a Praecipe to Discontinue which was filed of record.

u. In [the 1996 litigation], the [c]ourt ordered that Ariel be awarded possession of the real property consisting of that area of the water of Lake Ariel currently occupied by the dock depicted in Exhibit D of the [Grodacks'] complaint described in paragraph 7 and 8 of the [Grodacks'] Complaint. Furthermore, this [c]ourt also ordered that [the Grodacks] shall remove

the dock in accordance with the [c]ourt's Order of January 9, 1997.

v. [The Grodacks] sought no post-trial relief or reconsideration nor filed any appeal relative to the grant of Ariel's Motion for Summary Judgment, but [the Grodacks] did remove the dilapidated dock in accordance with the [c]ourt's Order of January 9, 1997.

w. Chester Grodack, Jr. has indicated at his deposition of March 23, 2016 that there was no specific mention of lake rights in either of the [Grodacks'] current Deeds but he did indicate that previous Deeds from prior owners do have lake rights.

x. The Grodack property runs on approximate perpendicular lines from East Shore Drive toward Lake Ariel "... to a point on the high water mark of a body of water known as Lake Ariel ..." ... "and hence along said high water mark ..."

y. The "Lake Rights Value" appraisal performed by Gerald E. Romanik upon agreement of the parties revealed a value of $41,000.00.

11. This [c]ourt further adopts all of the documents and exhibits that were attached to the parties' May 16, 2018 Stipulation of Authenticity and Admissibility of Documents.

12. During trial, the Grodacks presented the testimony of Chester Grodack, Jr., Mary Clare Wagner, Shane Grodack and the expert testimony of Attorney Anthony Waldron and William Schoenagel.

13. Ariel Land Owners presented the testimony of Ariel Land Owners Board member, Theodore Malakin, and the expert testimony of Alfred J. Howell.

14. Upon review of the deeds at issue the November 9, 1883 Deed [hereinafter "the 1883 Deed"] from Jones to Swingle, which is recorded in the Wayne County Recorder of Deeds Office in Deed Book 63, page 572 contained a reservation of lake rights. The 1883 Deed contains a reservation of rights to the waters of Lake Ariel as follows:

"The parties of the first part also reserve for themselves, their heirs and assigns, the right to go with their cattle and stock to the said pond at such other points along the pond as they may choose ... the parties of the first part also reserve for themselves, their heirs and assigns to float timber taken from their lands across said pond or haul it on the ice to such place as they may wish..."

See, Exhibit 19F.

15. In 1883, the Joneses owned over 500 acres of land at Lake Ariel which included the area where the Grodack Property is presently located.

16. The lake rights reserved in the Jones chain of title was never surrendered or relinquished.

17. Chester Grodak, Mary Clare Wagner and Shane Grodack testified that the Grodacks have used the waters of Lake Ariel for recreational purposes in all seasons from 1951 continuing forward without the permission of [Ariel].

18. The testimony of surveyor William F. Schoenagel (hereinafter "Mr. Schoenagel") confirms and establishes the high water mark at Lake Ariel as 1425.9 feet and that presently the water level of Lake Ariel extends above the high water mark and onto the Grodack Property .10' above the high water mark.

19. Mr. Schoenagel surveyor's map, together with his testimony, establishes that the former dock on the Grodack Property that was the subject of the [1996 litigation] is positioned near the dividing line between Lots 1 and 2.

20. A review of the January 1997 Court Order does not contain language dealing with a claim of lake rights by either party. The January 1997 Order of Court gave [Ariel] possession of the real property under the former Grodack dock. The January 1997 Order did not establish or extinguish any matters related to title or access to the lake as to either the Grodacks or [Ariel].

21. The January 1997 Order did not contain any language determinative of the Grodacks' lake rights.

22. Shane Grodack testified that in 2017 he utilized his motor boat and placed a floating dock in the waters of Lake Ariel in 2017 and did so without the knowledge, authority or consent of Chester Grodack or Mary Clare Wagner.

Opinion, 7/12/18, at 3–11.

As noted *supra*, a bench trial occurred on May 30, 2018. The court granted the Grodacks' request for declaratory relief, finding that the Grodacks established their right to use and access the waters of Lake Ariel. Order, 7/12/18, at 1. The court also found that the Grodacks were subject to Ariel's rules and regulations regarding use of Lake Ariel and monies or dues required from Ariel for the years 2015 forward must be paid within sixty days of the date of the order. *Id*. Finally, in that same order, the trial court denied Ariel's motion for contempt. *Id*. at 2.

Ariel filed a timely post-trial motion on July 20, 2018, which the trial court denied on July 31, 2018. The Grodacks filed a *pro se* post-trial motion on July 30, 2018, but neglected to deliver a copy of it to the trial court. Ariel filed a timely notice of appeal on August 24, 2018.[2] The Grodacks filed a timely notice of cross appeal on September 7, 2018. The trial court ordered

---

[2] On September 28, 2018, this Court, *via* a *per curiam* order, directed, *inter alia*, Ariel to show cause why this case should be transferred to the Commonwealth Court because Ariel may be a not-for-profit corporation. Ariel responded with documentation proving their status as a for-profit corporation. This Court discharged the rule and allowed the appeal to proceed. Order, 10/16/18. In the September 28, 2018 order, this Court also noted that a final judgment had not been entered as required by Pa.R.A.P. 301 and directed Ariel to praecipe the trial court Prothonotary to enter judgment. Ariel did so on October 2, 2018.

Ariel and the Grodacks to file concise statements of matters complained of on appeal, pursuant to Pa.R.A.P. 1925. Orders, 9/5/18 and 9/17/18. On October 12, 2018, the trial court found that because the Grodacks failed to file a post-trial motion, all of their issues on appeal had been waived. Order, 10/12/18, at 1–2. Although it is unclear from the record, it appears that the Grodacks delivered a copy of their post-trial motion to the trial court after the October 12, 2018 order was entered. The trial court then filed a second order on October 26, 2018, in which it found that the Grodacks' post-trial motion was untimely and denied it for that reason.

Ariel presents the following questions for our review:

1. Whether the Trial Court erred as a matter of law and/or abused its discretion in granting [the Grodacks'] request for Declaratory Judgment granting [the Grodacks] lake rights in and to the waters of Lake Ariel?

2. Whether the Trial Court erred denying [Ariel's] Petition for Contempt?

Ariel's Brief at 4. The Grodacks filed a cross-appeal in the instant case and present the following question for our review:

Whether the Trial Court abused its discretion in ordering [the Grodacks] to pay all dues and/or monies required from [Ariel] for the years 2015 through the present and going forward into the future?

Grodacks' Brief at 1.

We will address Ariel's allegations of error first. Our standard of review of a trial court's disposition of declaratory review is as follows:

Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

Additionally, [w]e will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

*Pocono Summit Realty, LLC v. Ahmad Amer, LLC*, 52 A.3d 261, 265 (Pa. Super. 2012) (citations and quotation marks omitted).

In support of its argument that the trial court erred when it granted the Grodacks' declaratory judgment action, Ariel makes several intermixed arguments.[3] Specifically, Ariel argues the trial court erred when it found the Grodacks had acquired a prescriptive easement to use Lake Ariel. Ariel's Brief at 12. Ariel avers the Grodacks are unable to show that they have used Lake Ariel for a period in excess of twenty-one years because the trial court granted Ariel's motion for summary judgment in the 1996 litigation, which Ariel alleges involved similar lake rights. *Id*. at 19. Ariel also posits that there is nothing in the chain of title that would give the Grodacks' rights to Lake Ariel and that to the extent the 1883 Deed created any right to use Lake Ariel for watering cattle, floating timber, or taking ice, those rights were at most an easement in gross, which Ariel argues is not assignable nor inheritable. *Id*. at 14, 16,

_____

[3] We note that Ariel's concise statement of matters complained of on appeal contained no less than twenty-six allegations of trial court error. Ariel's Concise Statement of Matters Complained of on Appeal, 9/17/18.

- 10 -

18.   Finally, Ariel argues that the Grodacks' instant action is barred by the 1997 Order, the doctrines of law of the case, the coordinate jurisdiction rule, and *res judicata*.  **Id**. at 21.

Upon review, we conclude that the trial court did not err when it granted the Grodacks' motion for declaratory judgment. As the trial court properly found, the Grodacks established a prescriptive easement to swim and use Lake Ariel for other recreational purposes.   In its opinion, the trial court found that the Grodacks had established a prescriptive easement due to their adverse, open, notorious, continuous and uninterrupted use of Lake Ariel for a period in excess of twenty-one years.  Trial Court Opinion, 7/12/18, at 11.  The trial court relied upon the testimony of Chester Grodack, Mary Clare Grodack, and Shane Grodack, as well as paragraph fifteen in the parties' Stipulation of Agreed Upon Facts, "wherein it was stipulated by the parties that the Grodacks have continually utilized the waters of Lake Ariel from 1951 to the present." **Id**.

In order to obtain a prescriptive easement, a party must do more than merely use the land for a period of twenty-one years.  That use must be "adverse, open, notorious, continuous and uninterrupted for 21 years." **Shaffer v. Baylor's Lake Assoc.**, 141 A.2d 583, 585 (Pa. 1958).  As the trial court properly found, there was an abundance of testimony from the Grodacks relating to their use of the lake.  Moreover, the parties stipulated that such use was continual from 1951 to the present and without Ariel's permission.

- 11 -

Stipulation of Agreed Upon Facts, 5/16/18, at ¶ 15. In its brief, Ariel boldly claims that "none of the ingredients" required for a prescriptive easement was established, but fails to set forth any analysis of the factors. Ariel's Brief at 20. In addition, Ariel also argues that if the Grodacks had established any adverse possession rights, those rights were extinguished by the 1996 litigation. Ariel fails to cite any case law in support of this contention, and we could find the argument waived. *See Harris v. Toy "R" Us-Penn, Inc.*, 880 A.2d 1270, 1279 (Pa. Super. 2005) ("We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review."). However, for reasons discussed *infra*, we conclude that this alternative argument regarding the 1996 litigation fails.

Ariel also argues that the trial court erred in finding that the Grodacks had an easement appurtenant. Ariel's Brief at 17–18. As the trial court correctly found, an easement appurtenant "is a liberty privilege or advantage that the owner of one piece of land has in the land of another." Trial Court Opinion, 7/12/18, at 12 (citing *Eprhata Area School District v. County of Lancaster*, 886 A.2d 1169 (Pa. Cmmlth. 2005)). An easement appurtenant benefits land and the right attaches to the land; in contrast, the beneficiary of an easement in gross is an individual and the right attaches to that individual. *Lindemuth v. Safe Harbor Water Power Co.*, 163 A. 159, 160 (Pa. 1932). "The right to enjoyment of an easement … that can be held only by the owner or occupier of a particular unit or parcel, is an appurtenant benefit." *See*

Restatement (Third) of Property: Servitudes § 1.5(1) (2000). Moreover, "the easement must bear some relation to the use of the dominant estate. A right not connected with the enjoyment or use of a parcel of land granted cannot be annexed as an incident to that land, so as to become appurtenant to it." *Hassler v. Mummert*, 364 A.2d 402, 404 (Pa. Super. 1976) (citation omitted). The benefit runs with the land, and once an individual transfers ownership of the dominant estate, the transferor retains none of the benefit. *See* Restatement (Third) of Property: Servitudes §§ 1.1(1)(a); 1.5(1) (2000). Conversely, with an easement in gross, the benefit is not tied to ownership or occupancy of a certain parcel of land. *See* Restatement (Third) of Property: Servitudes § 1.5(2) (2000).

As the trial court noted, the 1883 Deed conveyed a portion of the land owned by the heirs of Joel Jones to Simon Swingle. Trial Court Opinion, 7/12/18, at 13. The Joneses conveyed only a portion of their land to Swingle and reserved broad lake and other rights so as to benefit their remaining land. *Id*. The trial court found that those rights were not extinguished or surrendered, and the land that benefitted from the reservation of rights included the land that eventually was acquired by the Grodacks. *Id*. The relevant language in the 1883 Deed is as follows:

> The parties of the first part also reserve for themselves **their heirs and assigns** the right to go with their cattle and stock to the said pond for water at such other points along said pond as they may choose but in so doing they are not to obstruct any road or way that may be built along said pond by said second party his heirs or assigns. The said parties of the first part also reserve the

right for themselves **their heirs and assigns** to float timber taken from their lands across said pond or haul it on the ice to such place as they may wish but in so doing no damage is to be done to fences. Also the right to cut and take from said ponds so much ice as they or of them need for private use.

1883 Deed, at 2 (emphases added).

Ariel argues that the trial court erred when it found the above language created an easement appurtenant, instead asserting that at most, the easement created is an easement in gross, which is personal in nature and not assignable. Ariel's Brief at 16–19. Although Ariel cites hornbook law discussing the difference between an easement appurtenant and an easement in gross, Ariel does not support this general discussion with citation to relevant case law, relying instead on rhetorical questions and dramatic flourish.

In *Maranatha Settlement Assoc. v. Evans*, 122 A.2d 679 (Pa. 1956), our Supreme Court was asked to determine whether bathing rights in a pool constituted an easement in gross or an easement appurtenant. In that case, a tract of land was divided into building lots, which were sold to individuals. *Id*. at 680. The company selling the lots constructed a swimming pool on the tract of land, and the deeds to the lots of land contained the following language: "The Grantee and his immediate family only shall enjoy the free use of the swimming pool." *Id*. Ultimately, the unsold lots were conveyed to another company, and that company sought to prevent the current owners of the conveyed lots from using the pool, arguing that the easement at issue was an easement in gross or a license, which was not transferable. *Id*. In finding

an easement appurtenant, the Court noted that it would be "utterly impossible" to believe the parties intended the privilege of using the pool to be a license or easement in gross because:

> a purchaser might remain the owner merely for a very short time and then deed the title to an assignee, in which case, if the plaintiff's position were correct, he would still have the right to bathe in the pools as possessing an easement in gross, but on the other hand, the new owner of property and all subsequent owners would have no right to the bathing privilege at all.

*Id*. at 681. The Court found an easement appurtenant despite the fact that there was no "heirs and assigns" language after the word "Grantee." *Id*. In determining the nature of the easement, the *Maranatha* Court looked to the "intent of the parties as determined by a fair interpretation of the language employed and consideration of all the attendant circumstances." *Id*. at 680–681. *See also Hassler*, 364 A.2d at 404 (same).

In the instant case, a review of the language used by the parties, as well as consideration of the attendant circumstances, support the trial court's finding that the Grodacks possess an easement appurtenant. First, we note that the 1883 Deed specifically states that the rights retained by the Joneses reserved those rights for their heirs and assigns. Second, the land of the Joneses, which was eventually acquired by the Grodacks, was the dominant parcel because it benefitted from rights retained by the Joneses after they conveyed a portion of their land to Swingle. The land conveyed to Swingle constitutes the servient or burdened parcel. Moreover, viewing the easement as an easement in gross would result in the illogicial situation similar to that

- 15 -

discussed in **Maranatha**: after conveying their remaining land to another, the Joneses could access Lake Ariel for various purposes, even if they no longer owned the dominant property. Similarly, the new owners of the property would not be able to access Lake Ariel, despite owning the property abutting the lake. Given the above, we find the trial court did not err when it found an easement appurtenant.

Next, Ariel argues that the trial court erred when it granted the Grodacks' request for declaratory relief because the action was barred by the 1997 Order, the law-of-the-case doctrine, the coordinate-jurisdiction rule, and *res judicata*. Ariel's Brief at 23, 28. The law-of-the-case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995).

> Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

**Id**.

In support of this argument, Ariel posits that the coordinate-jurisdiction rule, which is within the ambit of the law-of-the-case-doctrine, should apply

because the matter at issue has already been adjudicated. Ariel's Brief at 28. "Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by the transferor trial judge." *Zane v. Friends Hosp.*, 836 A.2d 25, 29 (Pa. 2003). Although Ariel acknowledges that the law-of-the-case doctrine "is more typically attached to an appellate decision remanded to a lower court, in the event that a Trial Court decision has not been appealed and its decision standing as a final determination in a matter (such as the 1997 Opinion), it should apply here." Ariel's Brief at 30. Ariel offers no citation to relevant authority in support of its claim that the law-of-the-case or the coordinate-jurisdiction rule should apply in the instant matter, which involved two separate actions and did not involve the transfer of any matter between courts. Moreover, the 1996 litigation related to the removal of the dock and did not grant or extinguish any title or ownership related to the water of Lake Ariel. Indeed, the order granting Ariel's motion for summary judgment ("the 1997 Order") states, "[Ariel is] awarded possession of the real property consisting of that area of the water of Lake Ariel currently occupied by the dock," and the court ordered the Grodacks to remove the dock before June 1, 1997. Order, 1/9/97. The 1997 Order does not establish or extinguish any lake rights; thus, the law-of-the-case doctrine is not applicable in the instant case.

Ariel also argues that *res judicata* should have barred the instant action.[4]

> Pursuant to the doctrine of *res judicata*, a final judgment on the merits by a court of competent jurisdiction will bar any future suit between the parties or their privies in connection with the same cause of action. The purposes behind the doctrine, which bars the relitigation of issues that either were raised or could have been raised in the prior proceeding is to conserve limited judicial resources, establish certainty and respect for court judgments and protect the party relying upon the judgment from vexatious litigation.

*McArdle v. Tronetti*, 627 A.2d 1219, 1222 (Pa. Super. 1993) (citations omitted). In order for *res judicata* to apply, there must be concurrence of the following four conditions between the present and prior actions: "1) identity of issues; 2) identity of causes of action; 3) identity of parties or their privies; and 4) identity of the quality or capacity of the parties suing or being sued." *Id*. As the trial court cogently pointed out, nothing in the pleadings or the motion for summary judgment in the 1996 litigation sought a determination as to title or ownership in the waters of Lake Ariel and the trial court's order in the 1996 litigation did not address the same. In contrast, in the instant matter, the Grodacks specifically asked the trial court to declare that they had established a prescriptive easement to recreational lake rights. Complaint, 5/21/15, at 7. The identity between the causes of action in the instant case and the 1996 litigation are not the same, and thus, *res judicata* does not apply

---

[4] This portion of Ariel's brief appears to have been drafted for the trial court, as the brief states that Grodack "has effectively asked this Honorable Court to 'reverse' its 1997 decision." Ariel's Brief at 30.

to bar the suit. To the extent Ariel is arguing that the trial court erred in not finding that the suit was barred by *res judicata*, Ariel is due no relief on that ground.

Ariel next argues that the trial court erred when it denied Ariel's petition for contempt. Ariel's Brief at 34.

> Our standard of review from an order denying a petition for civil contempt is as follows. This Court will reverse a trial court's order denying a civil contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner lacking reason. **Harcar v. Harcar***,* 982 A.2d 1230, 1234 (Pa. Super. 2009) (citations omitted). In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court order. **Lachat v. Hinchcliffe***,* 769 A.2d 481, 489 (Pa. Super. 2001) (citations omitted). To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent. **Id***.*

**MacDougall v. MacDougall**, 49 A.3d 890, 892 (Pa. Super. 2012). Moreover, we note that "each court is the exclusive judge of contempt against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs." **Sutch v. Roxborough Memorial Hosp.**, 142 A.3d 38, 67 (Pa. Super. 2016) (quoting **Mrozek v. James***,* 780 A.2d 670, 673 (Pa. Super. 2001)).

In support of its appeal, Ariel argues the 1997 Order required the Grodacks to remove a dock placed in Lake Ariel. Ariel's Brief at 34. The original dock was removed, but during the pendency of this litigation, Shane

Grodack, the current occupant of the Grodack home, placed a new dock in the waters of Lake Ariel. *Id*. at 35. Ariel argues that despite the fact that neither Chester Grodack, Jr. nor Mary Clare Wagner, the named parties in this action, was responsible for replacing the dock, they should be held in contempt because they "could compel compliance of all family members with [the 1997 Order]." *Id*. at 37.

In its opinion, the trial court found "the testimony of Mary Clare Wagner and Chester Grodack established that neither of them authorized, had knowledge or consented to the placement of the floating dock in the waters of Lake Ariel." Trial Court Opinion, 6/12/18, at 15. The trial court found that Shane Grodack testified that he was the individual that placed the dock on Lake Ariel, and therefore, neither Mary Clare Wagner nor Chester Grodack "engaged in any conduct that constitute a willful violation of the 1997 Court Order." *Id*.

In support of its argument that the trial court erred, Ariel cites to *Commonwealth v. Michel*, 522 A.2d 90 (Pa. Super. 1987).[5] *Michel* does not provide support for Ariel's argument; rather, it supports the trial court's decision to deny the contempt petition. In *Michel*, this Court reversed the

_____

[5] Ariel's brief on appeal also includes a discussion of the amount of counsel fees Ariel believes it is entitled to, which were incurred as a result of its petition for contempt. It appears this portion of Ariel's brief was originally filed with the trial court. Nevertheless, because we find the trial court did not err in denying the petition for contempt, we will not address this alleged error by the trial court.

trial court's finding of contempt against a sheriff. *Id*. at 91. Prior to the finding of contempt, the trial court had informed the sheriff that he would be held in contempt if his deputies did not timely bring defendants to the court. *Id*. at 92. A deputy was late bringing a defendant to the court room, and the trial court found the sheriff in contempt. *Id*. In reversing the contempt order, this Court noted:

> Initially, we must say that the holding of an individual in contempt for the actions of a third party would appear inappropriate and, therefore, unsupportable unless the individual consciously directed the third party to act as he did and possessed such authority over the third party that he could compel compliance with the directive. Perhaps then the act of a third party could be imputed to the directing party. However, even then it would be necessary to find wrongful intent. In the present case, the actions of appellant cannot be found either volitional or committed with wrongful intent. Consequently, the four necessary factors for finding an individual in contempt are not met. Sheriff Michel had **no knowledge of his deputy's failure to take the criminal defendant to the courtroom, took no steps to prevent the defendant's appearance nor is there evidence of any intent to not present the defendant to the court on time**.

*Id*. at 93. (emphasis added).

In the instant case, we find that the trial court did not err when it denied Ariel's contempt petition for the same reasons outlined in *Michel*. Neither Chester Grodack nor Mary Clare Wagner was aware that the floating dock had been placed in Lake Ariel, neither took any steps to have the floating dock placed in Lake Ariel, nor was there any evidence of intent to do so. N.T., 6/30/18, at 70, 79, 87, and 94. Moreover, Shane Grodack testified that he placed the dock in the water and did so without permission of either Chester

- 21 -

Grodack or Mary Clare Wagner. *Id*. at 101. There was no error on the part of the trial court.

As explained *supra,* the Grodacks have also filed a cross appeal arguing that the trial court abused its discretion when it required them to pay all dues and/or monies required by Ariel for the years 2015 and beyond. Grodacks' Brief at 1. In support of this issue, the Grodacks argue that the trial court erred because there are no findings of fact nor conclusions of law that support this award of fees. *Id*. at 9. Moreover, the Grodacks aver that Ariel did not seek any dues or monies to be paid in its answer, new matter, or counterclaim. *Id*. Before we reach the merits of the Grodacks' appeal, we must determine whether they properly preserved any appellate issues because they failed to timely deliver a copy of their post-trial motions to the trial court.[6]

It is well established in this Commonwealth that a failure to file post-trial motions will result in a waiver of claims on appeal. *L.B. Foster Co. v. Lane Enterprises, Inc.*, 710 A.2d 55 (Pa. 1998). Pursuant to Pa.R.C.P. 227.1, a party must file post-trial motions within ten days after the verdict, or if a party filed a post-trial motion, the other party has ten days within which to file its post-trial motion. Pa.R.C.P. 227.1 (c). Pursuant to Rule 227.1, the party filing a post-trial motion, "shall serve a copy promptly upon every other party to the action and deliver a copy to the trial judge." Pa.R.C.P. 227.1(f).

---

[6] Despite the trial court's finding that the Grodacks failed to preserve any issues due to their untimely filed post-trial motion, the Grodacks do not address this issue in their appellate brief filed with this Court.

In the instant case, Ariel timely filed its post-trial motion on July 20, 2018. On July 30, 2018, the Grodacks, acting *pro se*, served a copy of their post-trial motion on Ariel, but failed to deliver a copy to the trial court. Motion of Plaintiffs for Post-Trial Relief, 7/30/18.

Because the Grodacks failed to deliver a copy of their post-trial motion to the trial court, the trial court was unaware it was filed until after its October 12, 2018 order, wherein the court found that the Grodacks failed to preserve any issues for appeal because they failed to file a post-trial motion. Order, 10/12/18, at 1–2 (citing **Warfield v. Shermer**, 910 A.2d 734, 737 (Pa. Super. 2006); **L.B. Foster Co.**, 710 A.2d at 55. At some point in the intervening two weeks, the Grodacks delivered a copy of their post-trial motion to the trial court, and on October 26, 2018, the trial court denied it as untimely. Order, 10/26/18.

It is well established in this Commonwealth that "if an issue has not been raised in a post-trial motion, it is waived for appeal purposes." **L.B. Foster Co.**, 710 A.2d at 55. Indeed, the failure to file a post-trial motion results in waiver because "no issues have been reserved for appellate review." **Diamond Reo Truck Co. v. Mid-Pacific Industries, Inc.**, 806 A.2d 423, 429 (Pa. Super. 2002). Where post-trial motions have been filed but are deemed untimely by the trial court, the court may rule on the merits. **Kennel v. Thomas**, 804 A.2d 667, 668 (Pa. Super. 2002). If, however, the trial court declines to rule on the merits of the issues waived in an untimely post-trial

motion, "those issues are waived and not preserved for purposes of appellate review." *Id*. Post-trial motions "serve an important function in adjucatory process in that they afford the trial court in the first instance the opportunity to correct asserted error." *Diamond Reo Truck Co.*, 806 A.2d at 423 (quoting *Commonwealth v. Picker*, 439 A.2d 162, 164 (Pa. Super. 1981). The Grodacks failed to deliver a copy of the their post-trial motion to the trial court, and we conclude, as the trial court did, that the Grodacks failed to preserve any issues on appeal.

For all the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/19