J-A29017-23

2024 PA Super 129

| | | |
|---|---|---|
| TEDESCO EXCAVATING & PAVING, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FWH DEVELOPMENT, LLC | : | |
| | : | |
| Appellant | : | No. 995 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 1, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 19-006017

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY KUNSELMAN, J.:                    **FILED: June 24, 2024**

## I.    Introduction

In this construction-contract dispute, the Defendant, FWH Development, LLC, appeals from the $678,238.31 judgment that the trial court entered, after a jury verdict in favor of Tedesco Excavating & Paving, Inc.  Because FWH anticipatorily repudiated the contract, and Tedesco sued before FWH invoked a termination provision in that contract, we affirm.

## II.    Factual & Procedural Background

FWH desired to build a residential and commercial development in Butler County, along State Route 228, known as Whitetail Meadows.  It hired Jerrod Crosby of David E. Wooster & Associates to serve as the Project engineer.  The plans included redoing an intersection on Route 228.

Mr. Crosby placed the Route 228 work, which involved widening the road and adding traffic lights, out for bids.  Tedesco was the lowest bidder.  At Mr. Crosby's recommendation, on May 19, 2015, FWH's owner, Fred Hespenheide,

signed a unit-price contract with Tedesco to perform the Route 228 work. The contract price was $1,259,000.00. ***See*** Plaintiff's Ex. 53, Agreement § 2 at 2, 6. The contract required the work to be completed in 220 days, and time was of the essence. ***See id.***

The contract included Article 15, "Suspension of Work and Termination." ***Id.***, Agreement § 4 at 32-34. Under Article 15.4, FWH could terminate the contract "without cause" after providing Tedesco and Mr. Crosby seven days' written notice. ***Id.*** at 33. If FWH invoked the provision, it agreed to pay Tedesco "for completed and acceptable work executed in accordance with the contract . . . including fair and reasonable sums for overhead and profit on such work." ***Id.*** (some capitalization omitted). However, Tedesco could ***not*** collect "anticipated profits or revenues or other economic loss arising out of or resulting from such termination." ***Id.***

Tedesco planned to complete the Route 228 work in 2015, but FWH soon informed it that FWH lacked funding for the Project. Thus, FWH could not commence the Project, and Tedesco was left with a gap in its 2015 paving schedule. As a result, Tedesco lost the 35% profit it expected to earn from the Route 228 work that summer. Still, Tedesco remained ready and eager to do the work whenever FWH obtained financing. The parties communicated intermittently over the next three years, but the Project never commenced.

On March 20, 2018, FWH asked Tedesco to send an escalation proposal for price increases from the original contract price, due to the rise in fuel, materials, and labor costs. Tedesco submitted a proposal to Mr. Crosby for

an estimated 5% increase, per year. This proposal brought the contract price to $1,560,000.00.

FWH still failed to start the Project in 2018. Instead, it hired Momentum, a Seattle-based company, to replace Wooster & Associates and Mr. Crosby as site manager. Momentum sent Bob Saunders to monitor the subcontractors and "the construction management on site and [to do] all of that work, labor bids, supervising bids." N.T., 5/12/22, at 538.

Mr. Saunders eventually met with Tedesco. He requested an updated escalation proposal. On August 15, 2018, Tedesco e-mailed Mr. Saunders a new contract price of $1,652,463.70. Mr. Saunders did not reply.

Seven months later, on March 25, 2019, in a communication to a third party, Mr. Saunders stated that FWH "awarded the contract for site paving and the [Route 228] improvements" to Shields Paving, Tedesco's competitor. Plaintiff's Ex. 60 at 1.

Then, on April 4, 2019, FWH's attorney wrote to Tedesco's subcontractor and Tedesco. He admitted FWH had no intention of honoring its contract with Tedesco.[1] According to FWH's attorney:

> In 2015, it was intended that Tedesco [would] serve as the [Route 228] contractor for the Whitetail Meadows . . . Project in Adams Township, Butler County . . .
>
> . . . In late 2018, Tedesco submitted a revised estimate for the cost of the [Route 228] work. Tedesco's revised cost estimate was substantially in excess of the original cost estimate provided by Tedesco in 2015. Tedesco's revised cost estimate was also in

---

[1] FWH's attorney has passed away. Thus, he did not testify at trial.

excess of other cost estimates for the [Route 228] work FWH
received from other contractors. As a result, [FWH will] no longer
use Tedesco to complete the [Route 228] work for the Project.

Plaintiff's Ex. 61 at 2.

Three weeks later, on April 23, 2019, Tedesco sued FWH for breach of

contract in the Court of Common Pleas of Allegheny County. It sought an

anticipated 35% overhead and lost profits from the Route 228 work.

Soon "after [FWH] got sued," on May 3, 2019, it wrote Tedesco. N.T.,

5/12/22, at 576; **see also** N.T., 5/11/22, at 443 (accord). The letter stated,

"Pursuant to Section 15.4 of the General Conditions of the [May 19, 2015]

agreement, [FWH] hereby provides the requisite seven days' notice of its

intention to terminate the agreement for convenience. Said termination will

be effective May 10, 2019." Defendant's Ex. 4 (some capitalization omitted).

The matter proceeded to a jury trial. The jurors found FWH in breach

of the 2015 contract and awarded Tedesco $401,046.00 for overhead and lost

profits. FWH sought post-trial relief. Also, Tedesco moved to mold the verdict

to include interest and attorneys' fees under Pennsylvania's Contractor and

Subcontractor Payment Act ("CASPA").[2] The trial court denied FWH's motion

and partially granted Tedesco's motion. It added $135,664.87 in interest;

$133,682.00 in attorneys' fees; and $7,845.44 in legal costs to the verdict.

The trial court entered judgment in favor of Tedesco for $678,238.31.

FWH appealed to this Court.

---

[2] **See** 73 P.S. §§ 501-517.

## III. Analysis

FWH raises the following nine issues:[3]

1. Whether the trial court erred as a matter of law in entering judgment for Tedesco for breach of contract where Tedesco failed to meet conditions precedent?

2. Whether the trial court erred as a matter of law in entering judgment for Tedesco for breach of contract where Tedesco failed to identify or prove material breach?

3. Whether the trial court erred as a matter of law in entering judgment for Tedesco for breach of contract where the trial court refused to apply the intent of the parties through the terms of the agreement, including the termination provision, which explicitly prohibits recovery of lost profit and overhead?

4. Whether the trial court erred as matter of law in entering judgment for Tedesco for breach of contract where Tedesco failed to prove its damages with reasonable certainty?

5. Whether the trial court abused its discretion by denying FWH's objections at trial requesting that Tedesco be precluded from providing testimony on projects allegedly similar in scope to the FWH project, when Tedesco failed to lay a proper foundation and provide FWH with underlying

_____

[3] FWH initially poses its nine issues as three compound questions. **See** FWH's Brief at 4-5. Tedesco responds, "Despite purporting to assert 'three' issues in this appeal, FWH has crammed the majority of its Statement of [Errors] Complained of On Appeal's 15 errors into its brief." Tedesco's Brief at 27-28, n.5. Tedesco claims this is "a taboo practice of appellate advocacy that raises the presumption that none of [FWH's] issues . . . have any merit." **Id.** at 27-28 (citing Aldisert, *The Appellate Bar: Professional Competence . . .* , 11 CAP. U. L. REV. 445, 458 (1982) ("When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy.")). We agree. Nevertheless, we dissect FWH's "three" questions into their component issues for ease of disposition. This mirrors the nine, separate arguments in FWH's brief.

documents on the allegedly similar projects during discovery or trial?

6. Whether the trial court erred as a matter of law in awarding interest and attorneys' fees under CASPA, because the clear and unambiguous terms of the Act apply only to claims of non-payment for work actually performed?

7. Whether the trial court erred as a matter of law in awarding interest and attorneys' fees under CASPA, because Tedesco failed to prove that FWH violated a payment term of the agreement?

8. Whether the trial court erred as a matter of law in awarding interest and attorneys' fees under CASPA, because attorneys' fees and interest for late payment is available only upon a finding that FWH violated a payment term of CASPA?

9. Whether the trial court erred as a matter of law in awarding interest and attorneys' fees under CASPA, because Tedesco waived any claim or allegation of bad faith.

**See** FWH's Brief at 4-5. We dispose of each issue in turn.

A. <u>Tedesco's Alleged Conditions Precedent</u>

First, FWH requests judgment notwithstanding the verdict ("JNOV"), because it believes the contract unambiguously required Tedesco to meet conditions precedent before FWH owed it any money. In FWH's mind, Tedesco failed to prove it fulfilled those conditions. Specifically, FWH argues that the contract required Tedesco to submit change orders to Mr. Crosby, if it wished to increase the contact price. Further, FWH claims the contract obligated FWH to provide supporting documents to justify any price increase. FWH thinks Tedesco disregarded this procedure on August 15, 2018, when Mr. Saunders asked it to submit a cost-escalation proposal.

FWH also argues that, by submitting the issue of whether it materially breached the contract to the jury, the trial court ignored the parties' intentions as expressed in the contract. In FWH's view, the court thereby rewrote the contract. Thus, the jury could not hold it in breach of contract, as a matter of law.

Tedesco replies that FWH has waived this issue and its accompanying theories of trial-court error. It contends, "The intent of the parties at the time of contracting was not an issue that FWH argued at trial." Tedesco's Brief at 27. Additionally, the "issue of Tedesco's adherence to purported 'conditions precedent' was similarly never raised or briefed by FWH in its post-trial submission." *Id.*; *see also id.* at 44-46.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." *Trigg v. Children's Hosp. of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020).

FWH's brief contains no "Statement of Place of Raising or Preservation of Issues," in violation of Pennsylvania Rule of Appellate Procedure 2117(c).[4]

---

[4] If "an issue is not reviewable on appeal unless raised or preserved below, the Statement of the Case shall also specify:

  (1)  The state of the proceedings in the court of first instance, and in any appellate court below, at which, and the manner in which, the questions sought to be reviewed were raised.

  (2)  The method of raising them (e.g. by a pleading, by a request to charge and exceptions, etc.).

*(Footnote Continued Next Page)*

*See* FWH's Brief at 6-8. Moreover, its reply brief does not indicate where FWH preserved this issue at trial. Instead, FWH responds that "Tedesco's wavier argument is wholly unavailing." FWH's Reply Brief at 7. FWH then quotes its Rule 1925(b) Statement of Errors to suggest that it properly preserved this issue for appellate review. *See id.* at 7-8.

FWH misunderstands issue preservation in Pennsylvania. Admittedly, "Issues not included in the [Rule 1925(b)] statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). However, including an issue in a 1925(b) statement does not preserve it for appeal, if an appellant abandoned that issue before, during, or after trial. This is because a 1925(b) statement is filed after the notice of appeal and, thus, after the trial court has lost jurisdiction over the case to an appellate court. As a result, the trial court is unable to correct the alleged error, and, if that error was not previous brought to the trial court's attention, the appellant never afforded the trial court an opportunity for self-correction.

Therefore, FWH's contention that it preserved this issue by raising it for the first time "in [its] Concise Statement . . . is wholly without merit." *Steiner*

_____

> (3)  The way in which they were passed upon by the court.
>
> (4)  Such pertinent quotations of specific portions of the record, or summary thereof, with specific reference to the places in the record where the matter appears (e.g. ruling or exception thereto, etc.) as will show that the question was timely and properly raised below so as to preserve the question on appeal."

Pa.R.A.P. 2117(c).

*v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009). As the **Steiner** Court explained, "a Rule 1925(b) statement cannot resurrect an otherwise untimely claim or objection." **Id.** FWH's reliance upon its 1925(b) statement to rebut Tedesco's waiver argument is wholly unavailing.

Turning to the trial transcript and FWH's post-trial motion, the record supports Tedesco's waiver argument. "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Furthermore, when "a litigant files post-trial motions but fails to raise a certain issue, that issue is deemed waived for purposes of appellate review." *Diamond Reo Truck Co. v. Mid-Pac. Indus., Inc.*, 806 A.2d 423, 428 (Pa. Super. 2002).

"This is because, as [the Supreme] Court has oft reminded, issue preservation is foundational to proper appellate review." **Trigg**, 229 A.3d at 269. "Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." **Id.** "It also promotes the orderly and efficient use of judicial resources, ensures fundamental fairness to the parties, and accounts for the expense attendant to appellate litigation." **Id.**

During trial, FWH made two motions for judgment as a matter of law. It moved for a compulsory nonsuit at the close of Tedesco's case-in-chief and for a directed verdict at the close of all the evidence. **See** N.T., 5/12/22, at 499, 713. Counsel for FWH said the grounds for the nonsuit were twofold.

- 9 -

First, FWH claimed that Tedesco "had not identified any term, any provision of . . . the contract which has been breached." *Id.* at 499. Second, FWH argued that Tedesco offered legally insufficient evidence of its damages from the breach. *See id.* at 499.

Regarding the claim that there was insufficient proof of breach, counsel argued, "to prove a breach of contract, you have to show the particular provision of the actual contract that existed has been breached." *Id.* at 500. "No provision of . . . the contract has been breached; no evidence has been offered." *Id.* "The only time that Tedesco was fired, Your Honor, was in the termination for convenience provision. That was when he was fired. That was after the complaint." *Id.* at 501. "There is no breach of the document that they brought, and it hasn't been identified." *Id.* Counsel never argued the contract was unambiguous, that the trial court disregarded the parties' intentions, or that Tedesco failed to fulfill conditions precedent.[5]

---

[5] We also note that counsel stated FWH had a brief for the trial court in support of its motion for a compulsory nonsuit. However, FWH neglected to file that brief of record. "The emphasis on the certified record is necessary because, unless the trial court certifies a  document as part of the official record, the appellate judiciary has no way of knowing whether that piece of evidence was duly presented to the trial court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record." *Commonwealth v. Preston*, 904 A.2d 1, 6–7 (Pa. Super. 2006). "Simply put, if a document is not in the certified record, the Superior Court may not consider it." *Id.*

Thus, for purposes of this appeal, the brief that FWH provided to the trial court at the time of its motion for compulsory nonsuit does not exist. Any additional arguments it may have made therein are waived based on its failure to include the brief in the record.

As for the motion for directed verdict, counsel for FWH only said, "I don't believe [Tedesco] has shown breach. [It has] had the opportunity to present challenge by the defense, and I stand by my argument that no breach has been shown." *Id.* at 713. Again, FWH's attorney made no mention of contract language being unambiguous, the trial court overriding the parties' intentions, or any conditions precedent as grounds for a directed verdict.

Additionally, FWH did not request JNOV based on a supposed failure of Tedesco to prove that it fulfilled conditions precedent. *See* FWH's Motion for Post-Trial Relief at 4-9. Instead, FWH sought JNOV on two grounds: (1) "the contract is clear and unambiguous that FWH could terminate for convenience" and (2) "Tedesco failed to prove damages for breach of contract with reasonable certainty." *Id.* at 4, 7.

Because FWH did not raise its first appellate issue and accompanying legal theories on conditions precedent at trial or in its post-trial motion, we dismiss that issue as waived. *See* Pa.R.A.P. 302(a); *Diamond Reo Truck*, *supra*.

B. FWH's Anticipatory Repudiation

As its second issue, FWH requests JNOV, because "Tedesco failed to identify what provision of the agreement FWH allegedly breached." FWH's Brief at 25 (some capitalization removed). Curiously, FWH alleges Tedesco failed to identify which provision it breached, but FWH then admits Tedesco identified "*almost every provision* of the contract" as the basis of FWH's breach. FWH's Brief at 26 (quoting N.T., 5/12/22, at 503) (emphasis added).

- 11 -

FWH also acknowledges Tedesco answered its motion for a nonsuit by arguing that "FWH didn't intend to pay [Tedesco, and FWH] said [it does not] intend to honor the contract." *Id.* (quoting N.T., 5/12/22, at 503). "What more fundamental breach can there be?" *Id.* Indeed. FWH's own brief disproves the underlying premise of its second issue. As we explain, Tedesco contended and proved FWH anticipatorily repudiated the contract as a whole and, in particular, its promise to pay Tedesco for doing the work.

When reviewing a trial court's denial of JNOV, "we must consider the evidence, together with all favorable inferences drawn therefrom, in the light most favorable to the verdict winner." *A.Y. v. Janssen Pharms. Inc.*, 224 A.3d 1, 11 (Pa. Super. 2019). Thus, we accept as true Tedesco's evidence, because it prevailed at trial. "Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact." *Id.* Also, JNOV "is a drastic remedy. A court cannot lightly ignore the findings of a duly selected jury." *Id.*

"We will reverse a . . . denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case." *International Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1267 (Pa. Super. 2012) (quoting *Janis v. AMP, Inc.*, 856 A.2d 140, 143–44 (Pa. Super. 2004)). "There are two bases upon which a [JNOV] can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Id.*

"Three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and (3) resultant damages." ***412 N. Front St. Assocs., LP v. Spector Gadon & Rosen, P.C.***, 151 A.3d 646, 657 (Pa. Super. 2016). The parties agree that they entered a binding contract on May 19, 2015 for Tedesco to work on Route 228 and for FWH to pay Tedesco for that work. Hence, FWH does not dispute proof of the first element.

Regarding the second element, FWH seemingly believes "that a breach of contract . . . can occur only at the time that the terms of the promise prescribed and under the conditions therein specified." Corbin, 9 CORBIN ON CONTRACTS § 959 at 756 (1979). In FWH's view, it could only breach **after** Tedesco performed the work and applied for payment under the conditions of the contract.

"The existing law, however, is otherwise." ***Id.*** FWH's promise to pay Tedesco imposed upon FWH "duties of immediate performance long before the time set for" FWH's payment arrived. ***Id.*** Thus, an "anticipatory repudiation or breach" may occur when one party expresses "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." ***Harrison v. Cabot Oil & Gas Corp.***, 110 A.3d 178, 184 (Pa. 2015).

The doctrine of anticipatory repudiation has existed in Pennsylvania for at least 175 years. In ***Campbell v. Gates***, 10 Pa. 483 (1849), on November 1, 1845, the parties entered into a five-year contract that Gates would mine, properly clean, and haul iron ore to Campbell's furnace. Gates delivered iron

- 13 -

ore until the following August and Campbell sent him a letter complaining that the ore was "of an inferior sort . . . which renders it very unproductive" in the furnace. *Id.* at 484. Campbell's letter then stated he would not accept future deliveries of ore unless it was pure. When Gates attempted another delivery, Campbell's agent rejected the ore. Gates immediately sued Campbell for breaching the entire contract.

In its charge, the trial court explained that whether Gates had properly cleaned the ore prior to August 18, 1846 was a factual question for the jury. But if the jury found Gates properly cleaned the ore, Campbell's August 18th letter was an anticipatory repudiation, as a matter of law. Directing a verdict for Gates on the element of breach, the court said:

> The letter, like the contract, is for the court to construe, and, taking it as a whole . . . we have no hesitation in pronouncing it a refusal [by Campbell to perform] the contract of 1st November, 1845 – a repudiation of that agreement – and a proposition to substitute for it new and inconsistent conditions. The contract specifies the terms on which [Campbell was] to receive and pay for [Gates'] ore; the letter informs [Gates] that "hereafter I will not receive any more of your ore on any other terms than such as I conceive fair and just." [But] the contract gives [Campbell] no right of dockage; the letter tells [Gates], plainly, that [Campbell has] assumed this right, "and if you think that you can stand the process of dockage of the ore you have hauled since the 1st of April, as well as that which you may haul hereafter, you may continue to haul." The contract contemplated the delivery of ore **properly cleaned**, which . . . might, or might not, be absolutely clean ore; [by contrast,] the letter demands "nothing but the pure iron ore."
>
> Now, when it is considered that Gates had received no intimation that his ore was not according to the contract, and when the letter was followed by an authorized refusal to weigh the only load he carried to the furnace after the receipt of the letter,

> we hold that he was right in regarding a letter couched in such terms as an interruption of the contract, and a refusal on the part of [Campbell] to go on with its performance. [Gates] did so regard it. He carried no more ore, but instituted this action for damages.

*Id.* at 486 (emphasis in original).

The trial court also held that the anticipatory repudiation "seemed to be comprehensive . . . ." *Id.* In other words, Gates could treat the repudiation as if it were an immediate, material breach. Hence, as a matter of law, Gates was entitled to "recover for the value of his contract for the whole time it had [left] to run." *Id.*

The jury found Gates properly cleaned the iron ore. Therefore, Campbell had no right to withhold his acceptance of it. The jury awarded Gates his lost profits for the five-year life of the contract. Campbell appealed and contended the August 18, 1846 letter was not an anticipatory repudiation, as a matter of law, but only "a requisition for exact performance . . . ." *Id.* at 487. Also, he contended Gates could only recover losses sustained from work he actually performed, not future lost profits.

Summarily rejecting Campbell's claims of error, the Supreme Court of Pennsylvania held that the jury charge was "accord[ed] with the views which this Court entertains on the subjects discussed" and affirmed "for the reasons stated by the learned judge." *Id.* at 487. Thus, the Supreme Court adopted the trial court's anticipatory-repudiation charge as Pennsylvania law. Under **Campbell**, if a party communicates his refusal to perform a contract to the

other party, a breach-of-contract action for damages on the entire contract immediately accrues to the other party.

Here, the Article entitled "Contract Price" dictated that FWH "**shall** pay [Tedesco] for completion of the work . . . ." Plaintiff's Ex. 53, Agreement § 2 at 2 (emphasis added). In July of 2015, FWH confessed its complete financial inability to pay Tedesco. At that point, it anticipatorily repudiated the contract, and Tedesco's cause of action for breach of contract accrued. FWH reaffirmed its anticipatory repudiation after it had acquired sufficient funds, when its attorney wrote the April 4, 2019 letter to Tedesco and admitted FWH would "no longer use Tedesco to complete the [Route 228] work . . . ." Plaintiff's Ex. 61 at 2.

Like the letter in **Campbell**, **supra**, FWH communicated its clear and unequivocal refusal to pay Tedesco under the original contract. As a matter of law, Tedesco "was right in regarding a letter couched in such terms as an interruption of the contract, and a refusal on the part of [FWH] to go on with its performance." **Campbell**, 10 Pa. at 486. Thus, Tedesco offered sufficient evidence to show "(1) the existence of a contract, including its essential terms [and] (2) a breach of the contract . . . ." **412 N. Front St. Assocs.**, 151 A.3d at 657.

Accordingly, FWH's second claim of error is meritless.

C.    FWH's Untimely Invocation of Termination Provision

Third, FWH argues it is entitled to JNOV, because it invoked Article 15.4, which gave FWH the right to terminate the contract without cause. Initially,

- 16 -

FWH reiterates that it did not breach prior to invoking the provision. As stated above, FWH anticipatorily repudiated the contract in July of 2015. It did not invoke Article 15.4 until May 3, 2019, *i.e.*, nearly four years later. Thus, any contention that FWH invoked the termination provision before repudiating the contract is factually erroneous.

Alternatively, FWH claims its anticipatory repudiation is irrelevant, as a matter of law, because Tedesco did not prove FWH invoked the termination provision in bad faith. FWH says, "there is no basis in the law which would eliminate the right to terminate, simply because such action is taken after a lawsuit is filed." FWH's Brief at 32. However, it cites no authority to support that contention, and the law is contrary to it.

As Professor Murray explained, "an innocent obligee [*i.e.*, Tedesco] may respond to an anticipatory repudiation in different ways." MURRAY ON CONTRACTS § 110[D] at 683 (5th ed. 2011). The innocent obligee's "two basic choices are to treat the contract as immediately breached prior to the time for performance or to await performance by the repudiating obligor." **Id.**

Tedesco chose the first option when it sued FWH; Tedesco treated the FWH contract as immediately breached prior to the time that FWH's payment obligation was due. By doing so, Tedesco terminated its contractual obligations to FWH, including the obligation to adhere to the termination-without-cause provision. "Where one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party **may regard it as terminated**, and demand whatever damage he has

sustained thereby." ***Hocking v. Hamilton***, 27 A. 836, 838 (Pa. 1893) (quoting ***Lovell v. St. Louis Mut. Life Ins. Co.***, 111 U.S. 264, 275 (1884)) (emphasis added).

This Court has said, if a breach "constitutes a material failure of performance, the non-breaching party is relieved from any obligation to perform; thus, a party who has materially breached a contract may not insist upon performance of the contract by the non-breaching party." ***McCausland v. Wagner***, 78 A.3d 1093, 1101 (Pa. Super. 2013). In other words, a repudiator may not hold the other party to terms of the repudiated contract. When a repudiation occurs, "the plaintiff ***either*** may rescind the contract and seek restitution ***or*** enforce the contract and recover damages based on expectation." ***Id.*** at 1102 (emphasis in original).

The jury found FWH's anticipatory repudiation to be a material breach. FWH does not challenge the finding of materiality on appeal. Thus, that factual finding is now final.

Under ***Hocking***, ***Lovell***, and ***McCausland***, Tedesco could properly treat FWH's anticipatory repudiation as a material breach that ended any obligations Tedesco had under the contract. Thus, when Tedesco filed suit against FWH, FWH lost its right to hold Tedesco to Article 15.4 and the limitation of damages thereunder. FWH's April 3, 2019 termination letter to Tedesco had no legal force or effect. By then, the contract no longer bound Tedesco, the innocent obligee. ***See*** Murray, ***supra***.

- 18 -

As such, the case upon which FWH relies, ***John B. Conomos, Inc. v. Sun Co. (R&M)***, 831 A.2d 696, 700 (Pa. Super. 2003), is distinguishable. There, Conomos agreed in May of 1996 to paint pipes in areas Seven, Eight, and Nine of Sun's refinery. Conomos completed area Seven and part of area Eight. However, Sun's inspector refused to approve Conomos' site prep and demanded that it take additional steps. Conomos complied but requested a price increase. Sun ignored that request, and Conomos abandoned the work.

Two months later, Sun sent a letter to Conomos invoking a provision that allowed Sun to cancel the contract, at any time. Upon Sun's invocation of the provision, Conomos "waive[d] any claim for . . . loss of anticipated profits . . . ." ***Id.*** at 704. It could still collect "the sum of all costs properly incurred by [Conomos] prior to the date of cancellation, plus any earned profit on such incurred costs, but in no event [could] such amount be greater than the contract price." ***Id.*** Based on Sun's interpretation of that provision, it said that it owed the contract price for area Seven, plus 50% of the contract price for area Eight, minus what it would cost to have someone else complete the work. "Conomos thereafter filed suit for the balance due under the contract, plus additional charges for the additional preparation required, as well as a claim under [CASPA]." ***Id.*** at 702 (some punctuation omitted).

The jury found the Sun had not inspected the Conomos' work in good faith. Thus, it held Sun in breach of an implied obligation to inspect the work in good faith and awarded damages. On appeal, this Court enforced the cancellation provision and its cap on Conomos' damages. Unlike this case,

- 19 -

however, Conomos never treated Sun's breach of its implied obligation to inspect Conomos' work in good faith as an anticipatory repudiation of the contract. Conomos also did not file suit on that theory prior to Sun invoking the cancellation provision. Thus, under that procedural posture, Conomos did not end its contractual obligations before Sun sent the cancellation letter.

If FWH wished to avail itself of Article 15.4 under **Conomos**, it needed to do so **before** it anticipatorily repudiated the contract and Tedesco filed suit. FWH did not. Thus, neither Article 15.4 nor **Conomos** excuse its anticipatory repudiation, which Tedesco and the jury deemed a material breach. By filing suit after FWH's anticipatory repudiation and before receiving formal notice of termination, Tedesco ended its obligation under Article 15.4 and preserved its common-law right to "demand whatever damage [Tedesco] sustained," including lost overhead and profits. **Hocking**, 27 A. at 838; **see also Campbell**, **supra**.[6]

---

[6] We note that FWH cites **Weaver & Sons Excavation LLC v. Wohlsen Construction Co.**, Ci-15-04681, 2016 Pa.D.&C. LEXIS 991 (C.C.P. Lancaster 2016) (unpublished). There, the trial court sustained a preliminary objection (a demurrer) to Weaver & Sons' claim for lost profits after Wohlsen **timely** terminated the contract. As alleged in the operable complaint, Weaver & Sons began excavation work under a contract with Wohlsen. In November of 2013, Wohlsen asked Weaver & Sons to remove its equipment from the site, and Weaver & Sons saw a competitor doing the work.

Instead of treating this as an anticipatory repudiation and immediately filing suit, Weaver & Sons wrote to Wohlsen inquiring about the project. Wohlsen replied that it did not require Weaver & Son's services "at this time." **Id.**, Trial Court Opinion, 6/23/16, at 3. Then, on April 10, 2014, Wohlsen notified Weaver & Sons that the contract was terminated. Weaver & Sons
*(Footnote Continued Next Page)*

Hence, we dismiss FWH's third appellate issue as meritless.

D.   Tedesco's Proof of Damages

Fourth, FWH claims Tedesco's evidence of damages is speculative and, therefore, insufficient.  "Tedesco failed to present evidence to establish the amount of profit [it] would have made on [Route 228] with reasonable certainty."  FWH's Brief at 39.  FWH maintains the 35% mark-up for overhead and profit in the unit-price contract in 2015 was mere guesswork by Tedesco. FWH indicates that no "witness testified . . . as to the amount of profit Tedesco would have actually received had Tedesco completed [the work] given real-world conditions."  *Id.* at 40.

Attempting to establish "real-world conditions," FWH cites the testimony of its witnesses.  FWH asserts the testimony of "Randy Park of Shields and [Mr.] Saunders of Momentum demonstrates that, even if Tedesco were willing to perform the actual project work, Tedesco would have encountered unforeseen conditions and delays . . ."  *Id.* at 41.  These unforeseen conditions, in turn, "would have affected Tedesco's bottom line and which were not accounted for or addressed by Tedesco."  *Id.*  These arguments go to the weight of the evidence, not its legal sufficiency.

In contract disputes, this Court has "recognized that proof of lost profits is not entirely of an unspeculative nature."  *Merion Spring Co. v. Muelles*

---

commenced its lawsuit on May 27, 2015, over a year after Wohlsen terminated the contract.  Thus, Weaver & Sons did not allege an anticipatory repudiation or treat the contract as terminated **before** the obligor invoked the termination provision.  **Weaver & Sons** is procedurally distinguishable.

*Hnos. Garcia Torres, S.A.*, 462 A.2d 686, 698 (Pa. Super. 1983) (some punctuation omitted). "Such must always be the case because, as a consequence of the breach, the injured party was not only deprived of whatever profits it would have made from the transaction, but it has also been deprived of the business records necessary to determine these profits with specificity." *Id.*

"The only situation in which specificity could have been maintained is now lost due to [FWH's] course of action breaching the contract." *Id.* "Having committed the breach, [FWH] cannot now be heard to complain about imprecision in the method of estimating the profits lost" by Tedesco. *Id.*

Furthermore, FWH's reliance upon its own witnesses violates our scope and standard of review. Instead of viewing the record facts in the light most favorable to Tedesco, as verdict winner, FWH views them in the light most favorable to itself. We remind FWH that the "jury [was] free to believe all, some, or none of the witness testimony presented at trial." *Carroll v. Avallone*, 939 A.2d 872, 874 (Pa. Super. 2007). Because it returned a verdict in favor of Tedesco, we must reject the testimony of FWH's witnesses on the grounds that the finder of fact deemed them incredible. Thus, FWH's attempt to relitigate the weight of the evidence by comparing its witnesses' testimony to that of Tedesco's witnesses fails to establish that FWH is entitled to JNOV.

Tedesco's vice president and its accountant both testified that Tedesco expected, and usually makes, a 35% profit on projects similar in nature and scope to the Route 228 work. The jury was free to accept their testimony as

true, and we will not reweigh the competing testimony of various witnesses on appeal. *See id.* The testimony of Tedesco's witnesses is sufficient, as a matter of law, to establish the third and final element for a breach-of-contract claim. *See 412 N. Front St. Assocs.*, 151 A.3d at 657.

FWH's fourth issue is meritless.

E.    Tedesco's Demonstrative

Next, FWH seeks a new trial, because the trial court "erred as a matter of law and abused its discretion in permitting Tedesco to testify concerning and [to] present a demonstrative [chart] containing information regarding allegedly similar projects." FWH's Brief at 38. However, FWH neglected to file that demonstrative with the Allegheny County Department of Court Records.[7] FWH's neglect of the filing procedure implicates waiver.[8]

We may not review anything beyond the record. Something "which is not part of the official certified record is considered to be non-existent," and "[w]here a review of an appellant's claim may not be made because of such a defect in the record, we may find the issue waived." *Eichman v. McKeon*, 824 A.2d 305, 316 (Pa. Super. 2003).

_____

[7] Following oral argument, our staff took the extraordinary step of contacting the Allegheny County Department of Court Records to ask if they accidentally forgot to forward the demonstrative to this Court. County personnel verified that the demonstrative was not of record. As such, no breakdown in the court system occurred.

[8] Our scope and standard of review for wavier appear in section III(A), *supra*. We reincorporate them here by reference.

"The original papers and **exhibits filed** in the lower court; paper copies of legal papers filed with the prothonotary by means of electronic filing; the transcript of proceedings, if any; and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases." Pa.R.A.P. 1921 (emphasis added). "All involved in the appellate process have a duty to take steps necessary to assure that the appellate court has a complete record on appeal[, but u]ltimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials." Pa.R.A.P. 1921, *Note*.

Here, FWH did not comply with the Rule. It failed to perfect the certified record by ensuring that the objected-to demonstrative was of record for this appeal. Further, FWH's summary in its brief of what it recalls of the demonstrative is a pale substitute for the demonstrative itself. And more importantly, because FWH did not include the demonstrative in the certified record, it "is considered to be non-existent." **Eichman**, 824 A.2d at 316.

We cannot perform a meaningful, abuse-of-discretion review of the trial court's rationale for permitting the use of a demonstrative that does not exist. Accordingly, FWH's failure to perfect the certified record by including the demonstrative therein has made it impossible for us to review the trial court's decision or the demonstrative's potential prejudicial effect, if any, upon the jury. FWH's violation of Rule 1921 is waiver. **See Eichman**, **supra**.

FWH's fifth appellate issue dismissed as waived.

F.     CASPA's Plain Language

- 24 -

As its sixth issue, FWH challenges the trial court's order to mold the verdict pursuant to CASPA, 73 P.S. §§ 505-507. Under CASPA, the trial court awarded Tedesco an additional $277,192.31 for interest, attorneys' fees, and legal costs. FWH contends this was error, because CASPA only applies if a contractor or subcontractor works on site. FWH believes that, by repudiating the contract before affording Tedesco a reasonable opportunity to work, FWH exculpated itself from CASPA liability. We disagree.

Whether CASPA applies when an innocent obligee treats an anticipatory repudiation as a material breach by filing suit appears to be a matter of first impression. Neither party cites any precedent where a court has considered CASPA's application in such a situation, and our research reveals none.

"The interpretation and application of a statute is a question of law." **Int. of C.K.M.**, 279 A.3d 610, 611 (Pa. Super. 2022), *appeal denied*, 291 A.3d 864 (Pa. 2023). "As with all questions of law, we must employ a *de novo* standard of review and a plenary scope of review . . . ." **Id.** at 612.

Our "goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly while construing the statute in a manner that gives effect to all its provisions." **Id.** (citing 1 Pa.C.S.A. § 1921(a)). As with all statutory interpretation, our review begins and pretty much ends with the statute itself. "It is well settled that the best indication of the General Assembly's intent may be found in a statute's plain language." **Id.** "When the words of a statute are clear and free from all ambiguity, the letter of it is

not to be disregarded under the pretext of pursuing its spirit."  1 Pa.C.S.A. § 1921(b).

CASPA is "a comprehensive statute enacted in 1994 to cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors." *Zimmerman v. Harrisburg Fudd I, L.P.*, 984 A.2d 497, 500 (Pa. Super. 2009).  A remedial statute, it is "to protect contractors and subcontractors and to encourage fair dealing among parties to a construction contract." *Id.* at 500–01 (some punctuation omitted).  When CASPA applies, "interest, penalty, attorney fees, and litigation expenses may be imposed on an owner . . . who fails to make payment to a contractor . . . in compliance with the statute." *Id.* at 501.

Under that statute, "Performance by a contractor or a subcontractor in accordance with the provisions of a contract shall entitle the contractor or subcontractor to payment from the party with whom the contractor or subcontractor has contracted."  73 P.S. § 504.  FWH claims this section requires actual work as a prerequisite for a contractor or subcontractor to recover under CASPA.  Section 504 expresses no such requirement.

Presumably, when the General Assembly enacted CASPA in 1994, it was well aware of Pennsylvania's common law of contracts, including the doctrine of anticipatory repudiation, which has existed since 1846.  *See Campbell*, *supra*.  Thus, if the legislature had wished to exclude cases such as this – where an owner anticipatorily repudiates a construction contract, and the

- 26 -

contractor (or the subcontractor) treats the repudiation as a material breach – from the scope of CASPA, it would have said so. The legislature did not.

Nothing in the plain language of Section 504 (or any other section) excludes anticipatory-repudiation claims from the statutory coverage. We can conceive of no reasons why the General Assembly would intend to punish obligors for breaching after a contractor (or subcontractor) has performed but not also intend to punish obligors for materially breaching before performance. The latter situation is more egregious, because it completely deprives the contractor (or subcontractor) of its expectation interest, whereas the former scenario only partially impacts that interest. Why would the General Assembly intend to remedy the lesser breach but not the greater? FWH offers no rationale for drawing such an absurd distinction based on **when** an owner materially breaches a construction contract. "The General Assembly does not intend a result that is absurd . . . ." 1 Pa.C.S.A. § 1922(1).

In our view, 73 P.S. § 504 merely recodifies a basic principle of contract law – namely, that a contractor or subcontractor has the right to be paid for doing the work. **See** MURRAY ON CONTRACTS § 108[B][2] at 665 (explaining that, when an owner fails to make a payment under a construction contract, "traditionally, such a failure has been regarded as a material breach by the owner."). More critically, Section 504 does not mention, much less govern, the liability of **owners** under CASPA; it only mentions contractors and subcontractors. Hence, Section 504 offers FWH no relief.

- 27 -

Additionally, FWH relies on 73 P.S. § 506(a). That subsection provides, "The owner may withhold payment for deficiency items according to the terms of the construction contract. The owner shall pay the contractor according to the provisions of this act for any item which appears on the invoice and has been satisfactorily completed." 73 P.S. § 506(a). The legislature defined "deficiency item" as "***Work performed*** but which the owner, the contractor or the inspector will not certify as being completed according to the specifications of a construction contract." 73 P.S. § 502 (emphasis added).

FWH did not allow Tedesco to work, because it anticipatorily repudiated the contract. There were no "deficiency items," for which FWH could withhold payment under Section 506(a), because FWH's violation of contract law prevented Tedesco from performing any work. We hold that in order for an owner to invoke Section 506(a) of CASPA, the owner must not have anticipatorily repudiated and, instead, must have allowed the contractor (or subcontractor) a meaningful opportunity to perform the work. Any result to the contrary would be absurd and palpably frustrate the remedial nature of CASPA. Thus, Section 506 does not shield FWH from statutory liability following its anticipatory repudiation.

Instead, as Tedesco contends, 73 P.S. § 505 imposes statutory duties upon owners, such as FWH. "The owner shall pay the contractor strictly in accordance with terms of the construction contract." 73 P.S. § 505(a).

On April 24, 2019, Tedesco provided FWH Application for Payment #2 for Final Payment, which detailed the lost overhead and profits that Tedesco

sought in the wake of FWH's anticipatory repudiation and material breach. Upon Tedesco's application for final payment, according to Article 5.2 of the contract, FWH "shall pay the remainder of the Contract Price . . . ."  Plaintiff's Ex. 53, Agreement § 2 at 2, 3.

The parties agree that FWH did not pay Tedesco the amount listed in Application for Payment #2 for Final Payment.  Therefore, FWH did not "pay [Tedesco] strictly in accordance with terms of the construction contract."  73 P.S. § 505(a).  We hold that, where (1) a party anticipatorily repudiates a construction contract, (2) the contractor (or subcontractor) demands final payment for its lost overhead and profits, and (3) the repudiating party refuses to pay the demanded sum, CASPA applies.  All of those things occurred here.  Hence, the trial court correctly applied the statute in this case.

FWH's sixth claim of error is meritless.

G.    FWH's Reliance upon Conditions Precedent

Next, FWH attempts to overturn the trial court's award of interest and attorneys' fees based on conditions precedent that it believes Tedesco needed to fulfill in submitting Application for Payment #2 for Final Payment.  FWH also reiterates its prior contention that it terminated the contract in its May 3, 2019 letter.  Based on the reasons expressed in section III(C), **supra**, we reject FWH's claim that it could invoke the termination-without-fault provision after anticipatorily repudiating and after Tedesco treated that repudiation as a material breach by filing suit.  As explained above, Tedesco exercised its right to end its obligations to FWH under the repudiated contract.

Similarly, Tedesco did not need to fulfill conditions precedent to submit Application for Payment #2 for Final Payment, such as seeking prior approval of the engineer. Its obligations under the contract ended when FWH materially breached. **See Hocking** and **Lovell**, **supra**. Moreover, by then, FWH had replaced Mr. Crosby as engineer, and Tedesco had no contractual relationship with Momentum. Hence, claiming that Tedesco should have submitted Application for Payment #2 to Mr. Crosby, rather than sending it directly to FWH itself, is facially illogical.

FWH's seventh issue is meritless.

## H.    Tedesco's Status as Substantially Prevailing Party

Next, FWH asserts that Tedesco is not a "substantially prevailing party." According to FWH, "Tedesco must prove that 'it is the substantially prevailing party in any proceeding to recover any payment under this act.'" FWH's Brief at 49 (quoting 73 P.S. § 512(b) (some punctuation omitted). As explained in section III(F), **supra**, Tedesco may recover under CASPA; hence, it is the **only** prevailing party in the post-trial CASPA proceeding. This issue is meritless.

## I.    Tedesco's Interest Award

Finally, FWH indicates the trial court awarded Tedesco "interest" in the amount of $135,664.87, "without identifying which type of interest – regular or penalty" – the award represented. FWH's Brief at 50. It then makes a conditional argument **if** the interest award was for penalty interest. **See id.** at 51-52. FWH argues, assuming the trial court awarded penalty interest, Tedesco waived any claim of bad faith by FWH at trial and, by doing so,

- 30 -

Tedesco forfeited penalty interest under CASPA. While the trial court did not specify whether its award was regular or penalty interest, this issue is moot.

Even if the trial court erroneously awarded the interest as a penalty, Tedesco sought both penalty and regular interest. **See** Tedesco's Motion to Mold the Verdict. The interest amounts are identical. Regular interest accrues "at the rate of 1% per month or fraction of a month on the balance that is at the time due and owing." 73 P.S. § 505(d). Similarly, penalty interest is "1% per month of the amount that was wrongfully withheld." 73 P.S. § 512(a)(1).

The trial court only awarded $135,664.87 in interest, rather than the $271,329.74 in interest that Tedesco sought. As explained above, Tedesco proved that it was entitled to recover under CASPA, including regular interest of $135,664.87.

This Court "may affirm the decision of the trial court on any valid basis appearing of record." **Louis Dreyfus Commodities Suisse SA v. Fin. Software Sys., Inc.**, 99 A.3d 79, 82 (Pa. Super. 2014). If the trial court awarded the $135,664.87 as penalty interest and if Tedesco should not have received penalty interest, we would affirm the order molding the verdict upward by $135,664.87 on the alternative basis that Tedesco deserved that sum as regular interest under CASPA. Thus, we would grant FWH no appellate relief, even if the trial court erroneously awarded penalty interest.

We dismiss FWH's final appellate issue as moot.

### IV. Conclusion

In sum, Tedesco offered sufficient evidence to defeat FWH's motions for judgment as a matter of law. By unequivocally announcing to Tedesco, first, that it could not and, later, that it would not pay Tedesco for the Route 228 work, FWH anticipatory repudiated the May 19, 2015 contract. Upon FWH's repudiation, Tedesco, the innocent obligee, could and did treat the repudiation as a material breach by filing suit. Like the trial court, we hold that the filing of the Complaint negated FWH's ability to terminate the contract thereafter. Thus, FWH may not escape liablity for its repudiation under Article 15.4 of the repudiated contract.

Moreover, a case of anticipatory repudiation is actionable under CASPA. Where an innocent obligee demands final payment for its expectation interest in a repudiated contract, the repudiator's refusal to meet that demand exposes it to CASPA liability, just as if the repudiator had allowed the obligee to perform the contract in full. We agree with the trial court's decision to award Tedesco 1% monthly interest, attorneys' fees, and legal costs.

Judgment affirmed.

Judge Murray joins.

Judge Bowes files a concurring/dissenting opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/24/2024