**DIAMOND REO TRUCK COMPANY, a Pennsylvania Corporation**

v.

**MID–PACIFIC INDUSTRIES, INC., an Oregon Corporation**

v.

**Osterlund, Inc., A Pennsylvania Corporation.**

**Appeal of Mid–Pacific Industries, Inc., an Oregon Corporation.**

Superior Court of Pennsylvania.

Argued June 19, 2002

Filed Aug. 26, 2002.

---

Stanley J.A. Laskowski, Harrisburg, for appellant.

Scott P. Bittner, Somerset, for Diamond Reo Truck Company, appellee.

Before: JOHNSON, JOYCE and HESTER, JJ.

JOYCE, J.

¶ 1 Appellant, Mid–Pacific Industries, Inc. (Mid–Pacific), appeals from the order entered by the trial court on September 5, 2001, following an unfavorable verdict rendered at the conclusion of a nonjury trial. The verdict was in favor of Appellee, Diamond Reo Truck Company (Diamond Reo). For the following reasons, we quash the appeal.

## FACTS

¶ 2 In December 1995, Diamond Reo purchased the assets and inventory of Osterlund, Inc. (Osterlund), the purchase being embodied in a written Asset Purchase Agreement. The Asset Purchase Agreement provided that Diamond Reo shall assume and agree to pay or discharge *only* liabilities for the purchase of items ordered by Osterlund in the ordinary course of business, and for replacement of items sold from the inventory prior to the closing date, December 15, 1995. In the Asset Purchase Agreement, Osterlund warranted and represented that it had no liabilities or obligations accrued, absolute, contingent or otherwise, except as disclosed in the Agreement or the exhibits attached thereto, or as incurred in the ordinary course of business since August of 1995. Osterlund did not disclose to Diamond Reo, either in the Agreement or otherwise, that it has an outstanding debt to Mid–Pacific, Inc. Diamond Reo had no knowledge of this debt

when it entered into the Asset Purchase Agreement with Osterlund.

¶ 3 According to the Asset Purchase Agreement, the consideration for Diamond Reo's purchase of Osterlund's assets was $619,142.33. At the time of closing, Diamond Reo paid to Osterlund a sum of $100,000.00. Diamond Reo executed a promissory note in favor of Osterlund for the remaining amount, $519,142.33. Diamond Reo and Osterlund also entered into a security agreement pursuant to which Osterlund retained a security interest in the assets, inventory and equipment purchased by Diamond Reo from Osterlund. Additionally, Diamond Reo executed in favor of LoJan Associates (LoJan) a promissory note (covenant note) in the amount of $100,000.00 for a covenant not to compete with LoJan.[1] For a substantial period of time and until the sale of its assets and inventory, Osterlund maintained its principal place of business at 7389 Paxton Street, Harrisburg, Pennsylvania. The building at this location was owned by LoJan. At the December 15, 1995 sale, Diamond Reo executed a seven-year lease agreement with LoJan with respect to the 7389 Paxton Street building, pursuant to which Diamond Reo agreed to pay $8,632.00 per month to LoJan in rent.

¶ 4 Approximately ten months after the purchase, Diamond Reo claimed that a substantial amount of the inventory was not usable or saleable, contrary to Osterlund's warranty. William J. Snyder, on behalf of Diamond Reo, brought this to the attention of Jan Osterlund who did not remedy the situation. As a result, Diamond Reo refused to make payments to Osterlund towards the principal purchase price. However, Diamond Reo continued to make payments of $3,640.00 to Osterlund towards the interest on the promissory note. These monthly payments totaled $117,640.00. In June 2000, citing Diamond Reo's failure to make the required payments, Jan Osterlund took possession of the Paxton Street property as well as all assets and inventory located on the property.

¶ 5 In an attempt to resolve the issues regarding Diamond Reo's refusal to make the required payments, the parties began negotiations and ultimately reached an agreement. Pursuant to this agreement, Diamond Reo paid $100,000.00 to Osterlund, Jan Osterlund, and LoJan Associates, who in turn executed a general Release in favor of Diamond Reo to settle all claims pertaining to the December 1995 Asset Purchase Agreement. This Release was executed on June 14, 2000. As a result of the Release, Diamond Reo recovered possession and use of the assets and inventory formerly owned by Osterlund, which were the subjects of the December 1995 sale.

¶ 6 Meanwhile, in 1997, Diamond Reo and Mid–Pacific entered into a contract for the sale of truck cabs for a total consideration of $77,700.00. The transaction proceeded as follows. On November 4, 1997, Mid–Pacific ordered seven truck cabs from Diamond Reo at the price of $77,700.00. On December 22, 1997, Diamond Reo delivered the seven truck cabs to Mid–Pacific

---

1. The complex relationship between Diamond Reo, Osterlund and LoJan is as follows:

William J. Snyder is the President of Diamond Reo, a truck and equipment parts company; Jan Osterlund is the principal and partner of LoJan Associates, which is a Pennsylvania partnership; Jan Osterlund, through LoJan Associates, is the President and principal shareholder of Osterlund. Prior to December 1995, William J. Snyder had engaged in business transactions with Osterlund that consisted of the purchase of truck parts for use or resale. Many of the transactions surrounding the December 15, 1995 asset and inventory sale were negotiated by William J. Snyder and Jan Osterlund.

along with an invoice for the contract price, $77,700.00.

¶ 7 After accepting delivery of the truck cabs, on December 24, 1997, Mid–Pacific sent a check to Diamond Reo in the amount of $55,198.90. The check was accompanied by a letter in which Mid–Pacific explained that it was exercising a set-off in the amount of $22,501.10 against the contract price of $77,700.00 which it owed Diamond Reo. The $22,501.10, according to Mid–Pacific, represents the amount owed by Osterlund, Inc. to Mid–Pacific, pursuant to an agreement dated July 2, 1992.

¶ 8 Mid–Pacific's rationale in withholding the $22,501.10 was that as a result of a 1992 transaction between Mid–Pacific and Osterlund, the latter owed the former a certain sum of money.[2] According to Mid–Pacific, since Diamond Reo purchased Osterlund's assets and inventory in 1995, Diamond Reo was responsible for Osterlund's 1992 debt to Mid–Pacific. Mid–Pacific's decision to withhold the $22,501.10 gave rise to the instant litigation.

## PROCEDURAL HISTORY

¶ 9 On April 7, 1998, Diamond Reo initiated the instant action by filing a complaint against Mid–Pacific for breach of contract. On April 30, 1998, Mid–Pacific filed Preliminary Objections to the complaint. An amended complaint was filed on May 7, 1998. On June 12, 1998, Mid–Pacific filed an Answer and New Matter, as well as a counterclaim, alleging that it was entitled to a set-off of the amount owed by Osterlund, Mid–Pacific also alleged that the sale of assets and inventory by Osterlund to Diamond Reo constituted a fraudulent conveyance. Additionally, Mid–Pacific alleged that as a result of the sale, Diamond Reo was the successor to Osterlund, and was therefore, liable for the latter's debts.

¶ 10 Mid–Pacific filed a joinder complaint against Osterlund, joining the latter as an additional defendant, and alleging breach of contract and fraudulent conveyance. The joinder complaint was served on Osterlund on August 10, 1998. Osterlund failed to respond to the joinder complaint and on March 12, 1999, Mid–Pacific obtained a default judgment against Osterlund in the amount of $23,995.15 plus interest at the rate of 9% per annum. On December 2, 1999, a Writ of Execution was subsequently issued against Osterlund. The Writ was directed to the Sheriff of Cumberland County, to be served on Osterlund.

¶ 11 On June 21, 2000, an arbitration hearing was held in the Court of Common Pleas of Somerset County, Pennsylvania to resolve the complaint filed by Diamond Reo. Both Diamond Reo and Mid–Pacific participated in the arbitration proceeding but Osterlund did not. The Arbitrators entered an award in favor of Diamond Reo and against Mid–Pacific in the amount of $22,501.10 plus interest. Mid–Pacific appealed the Arbitrator's decision to the trial court, which conducted a trial on June 4, 2001.

¶ 12 The nonjury trial was presided over by the Honorable Kim R. Gibson of the Court of Common Pleas of Somerset County. Both Diamond Reo and Mid–Pacific participated in the trial but Osterlund did not. Following the June 4, 2001

2. The transaction between Mid–Pacific and Osterlund involved a settlement agreement between them which states that Osterlund owes Mid–Pacific $15,000.00 plus interest, all of which is payable either four years from the effective date of the agreement, July 2, 1992, or upon the sale, transfer, or other distribution of all or substantially all of the assets or outstanding stocks of Osterlund, or at such time as Osterlund's financial situation allowed for the payment of the debt to Mid–Pacific without undue hardship to Osterlund.

trial, the trial court kept the record open until June 18, 2001, to permit Diamond Reo to submit certain portions of a deposition transcript and to permit both parties to submit briefs and memorandums of law.

¶ 13 On September 5, 2001, the trial court issued an opinion and order in which it rendered a verdict in favor of Diamond Reo, and against Mid–Pacific in the amount of $22,501.10 plus interest at the rate of 6% per annum. The court also found in favor of Diamond Reo, and against Mid–Pacific with respect to the latter's set-off claim and counterclaim. No motions for post-trial relief were filed.

¶ 14 On October 5, 2001, Mid–Pacific filed a notice of appeal with this court.[3] At the direction of the trial court, Mid–Pacific filed a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court has also filed a statement pursuant to Pa.R.A.P.1925(a).

¶ 15 The questions presented for our review are as follows:

A. WHETHER THE ASSET SALE AND TRANSFER FROM APPELLEE OSTERLUND TO APPELLEE DIAMOND REO CONSTITUTED A FRAUDULENT CONVEYANCE UNDER 12 Pa.C.S. § 5105 OF THE PENNSYLVANIA UNIFORM FRAUDULENT CONVEYANCE ACT[?]

   1. WHETHER APPELLEE OSTERLUND DID NOT MAKE A TRANSFER OF ASSETS TO APPELLEE DIAMOND REO FOR REASONABLE EQUIVALENT VALUE[?]

   2. WHETHER APPELLEE OSTERLUND WAS INSOLVENT OR BECAME INSOLVENT AS A RESULT OF THE ASSET SALE AND TRANSFER AND WRITTEN RELEASE EXECUTED BY APPELLEES[?]

B. WHETHER ACTUAL INTENT TO DEFRAUD CREDITOR APPELLANT MID–PACIFIC EXISTED FROM THE INCEPTION OF THE ASSET TRANSFER AND THE WRITTEN RELEASE BETWEEN APPELLEES CONSTITUTING A FRAUDULENT CONVEYANCE UNDER 12 Pa.C.S. § 5104 OF THE PENNSYLVANIA UNIFORM FRAUDULENT CONVEYANCE ACT[?]

C. WHETHER APPELLEE DIAMOND REO IS A CORPORATE SUCCESSOR TO APPELLEE OSTERLUND AND THUS LIABLE FOR THE OBLIGATIONS OF APPELLEE OSTERLUND TO APPELLANT MID–PACIFIC[?]

D. WHETHER APPELLANT MID–PACIFIC IS ENTITLED TO A SET–OFF OF ITS JUDGMENT AGAINST APPELLEE OSTERLUND AGAINST THE CLAIMS OF APPELLEE DIAMOND REO[?]

E. WHETHER THE SEPTEMBER 5, 2001, OPINION AND ORDER OF THE TRIAL COURT AFTER A NON–JURY TRIAL CONSTITUTES AN APPEALABLE FINAL ORDER TO WHICH POST–TRIAL MOTIONS ARE NOT REQUIRED AND THE ISSUES SET FORTH IN APPELLANT'S CONCISE STATEMENT OF MATTERS COMPLAINED OF ON APPEAL PURSUANT TO Pa.R.A.P. 1925 ARE PRESERVED FOR APPELLATE REVIEW[?]

Brief for Appellant, at 4.

## DISCUSSION

■ ¶ 16 We begin by addressing Appellant's last issue, namely, whether this

---

**3.** As it did in the proceedings below, Osterlund has not filed a brief with this Court and is not otherwise participating in the instant appeal.

appeal is properly before us because this issue is determinative of the entire appeal. Rule 227.1(c) of the Pennsylvania Rules of Civil Procedure provides as follows:

(c) Post-trial motions **shall** be filed within ten days after

(1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or

(2) notice of nonsuit or the filing of the decision or adjudication in the case of a trial without jury or equity trial.

If a party has filed a timely post-trial motion, any other party may file a post-trial motion within ten days after the filing of the first post-trial motion.

*Id.* (emphasis added). The Pennsylvania Supreme Court has stated that the filing of post-trial motions is mandatory if a litigant wishes to preserve issues for appellate review. *See L.B. Foster Co. v. Lane Enterprises, Inc.,* 551 Pa. 307, 710 A.2d 55 (1998) ("Pa.R.Civ.P. 227.1 requires parties to file post-trial motions in order to preserve issues for appeal. If an issue has not been raised in a post-trial motion, it is waived for appeal purposes. *See Benson v. Penn Central Transportation Company,* 463 Pa. 37, 342 A.2d 393 (1975) and *Commonwealth v. Metz,* 534 Pa. 341, 633 A.2d 125 (1993)"); *Lane Enterprises, Inc. v. L.B. Foster Co.,* 551 Pa. 306, 710 A.2d 54 (1998) (same).

¶ 17 In *Lane Enterprises, Inc. v. L.B. Foster Co.,* 700 A.2d 465, 469–470 (Pa.Super.1997), after a nonjury trial in a breach of contract action, the trial court issued an opinion disposing of issues the parties raised in trial memoranda. Following the trial court's decision, instead of filing post-trial motions, the appellant, Foster, filed a praecipe to enter judgment and a notice of appeal. A panel of this Court reviewed

the merits of the appeal despite the lack of post-trial motions. *Id.* In a one-paragraph *per curiam* order, the Pennsylvania Supreme Court reversed this Court and reiterated the importance of post-trial motions. *See Lane Enterprises, Inc.,* 710 A.2d at 54 and *L.B. Foster Co.,* 710 A.2d at 55.

¶ 18 In other decisions applying Pa. R.C.P. 227.1 in actions at law,[4] our Court has consistently quashed appeals from orders or verdicts following nonjury trials when no post-trial motions were filed. *See e.g. Baughman v. State Farm Mut. Auto. Ins. Co.,* 441 Pa.Super. 83, 656 A.2d 931 (1995) (quashing an appeal taken directly from an order, captioned as a judgment, which was entered after a nonjury trial); *Krystal Development Corp. v. Rose,* 704 A.2d 1102, 1103 (Pa.Super.1997) (without post-trial motions after a nonjury trial, there are no issues preserved for appellate review). The importance of filing post-trial motions cannot be overemphasized. "[T]his is not blind insistance [sic] on a mere technicality since post-trial motions serve an important function in adjudicatory process in that they afford the trial court in the first instance the opportunity to correct asserted trial error and also clearly and narrowly frame issues for appellate review." *Fernandes v. Warminster Mun. Auth.,* 296 Pa.Super. 523, 442 A.2d 1174, 1175 (1982). Even when a litigant files post-trial motions but fails to raise a certain issue, that issue is deemed waived for purposes of appellate review. *See Hall v. Owens Corning Fiberglass Corp.,* 779 A.2d 1167, 1169 (Pa.Super.2001) (where a claim was not specified in the post-trial motions, the issue was not preserved and is, therefore, waived).

---

4. We recognize that different rules may apply to actions in equity. *See Chalkey v. Roush,* 757 A.2d 972, 978—979 (Pa.Super.2000)(en banc).

¶ 19 In the present case, it is undisputed that following the trial court's opinion and order, Mid–Pacific failed to file post-trial motions. Therefore, on the basis of Pa.R.C.P. 227.1 and the cases cited above, this appeal must be quashed because no issues have been preserved for appellate review. Despite the absence of post-trial motions, however, Mid–Pacific argues that this appeal should not be quashed because its 1925(b) statement preserved the issues for appellate review, and gave the trial court an opportunity to correct its errors. We disagree. The central question is whether the filing of a 1925(b) statement revives issues that have been waived due to failure to file post-trial motions. We hold that the filing of a 1925(b) statement does not excuse the failure to file post-trial motions and does not revive or preserve issues that are waived for failure to file post-trial motions. Appellant has provided us with no authority, and our research reveals no authority for Mid–Pacific's assertion that a 1925(b) statement excuses waiver of issues when an appellant fails to file post-trial motions. Followed to its logical conclusion, Mid–Pacific's argument, if accepted, would eviscerate the essence of our rules governing post-trial practice and the preservation of issues for appellate review. For instance, Pa.R.C.P. 227.1(b) provides as follows:

(b) Post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

*Id.* The Note accompanying this rule explains that "if no objection is made, error which could have been corrected in pre-trial proceedings or during trial by timely objection may not constitute a ground for post-trial relief." Thus, under Rule 227.1(b), issues must be preserved by timely objections and motions before trial or during trial in order for those issues to be raised in a post-trial motion. If one accepts Appellant's argument that the filing of a 1925(b) statement is tantamount to the filing of post-trial motions, then a litigant can choose to ignore the requirements of Rule 227.1(b)(1) and (2) and instead file a 1925(b) statement which does not contain the same requirements as Rule 227.1(b)(1) and (2). We are not convinced that Pa. R.C.P. 227.1 and Pa.R.A.P.1925(b) are interchangeable or that a 1925(b) statement is the equivalent of a post-trial motion. We are also not convinced that a 1925(b) statement provides a means to circumvent the requirements of Pa.R.C.P. 227.1(b)(1) and (2).

¶ 20 It is important to note that when post-trial motions are filed, the trial court has jurisdiction to reconsider, modify, correct, reverse or uphold its pre-trial rulings, its rulings during trial or it decision at the conclusion of the trial. Pursuant to Pa. R.C.P. 227.1(a).

(a) After trial and upon the written Motion for Post–Trial Relief filed by any party, the court may

(1) order a new trial as to all or any of the issues; or

(2) direct the entry of judgment in favor of any party; or

(3) remove a nonsuit; or

(4) affirm, modify or change the decision or decree nisi, or

(5) enter any other appropriate order.

*Id.* On the other hand, the direction to file a 1925(b) statement, and the filing of such a statement takes place after an appeal has been filed. It is axiomatic that, subject to certain exceptions, "after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701. Thus, the actions which a trial court is empowered to take upon the filing of post-trial motions are different from those that can be taken following the filing of a 1925(b) statement. In fact, Pa.R.A.P.1925 specifies the limited actions which the lower court may take upon receiving the notice of appeal: (1) if the reasons for the order appealed from do not already appear of record, the trial court should file an opinion providing such reasons (Pa.R.A.P.1925(a)); and (2) the trial court may also direct the appellant to file a statement of matters complained of on appeal. Pa.R.A.P.1925(b).

¶ 21 Post-trial motions and 1925(b) statements serve different functions and are not synonymous with each other. The failure to file post-trial motions cannot be excused or replaced by the filing of a 1925(b) statement. Thus, issues that are waived for failure to file post-trial motions or for other reasons cannot be revived or saved simply by raising those issues in a 1925(b) statement. Even though a 1925(b) statement raises issues before the trial court first, an issue must have been otherwise preserved for the trial court to consider that issue. *See generally, Commonwealth v. Picker,* 293 Pa.Super. 381, 439 A.2d 162 (1981). In *Picker,* at the conclusion of the trial, the appellant did not file post verdict motions. Upon receiving the appellant's notice of appeal, the trial court ordered the appellant to file a 1925(b) statement and he complied. The trial court issued an opinion addressing the issues raised in the 1925(b) statement. On appeal, our Court opined that:

[While the filing of a 1925(b) statement is helpful, it] is certainly not an adequate substitute for the filing of post-verdict motions because the latter ask the lower court to reconsider its decision in light of alleged errors whereas the former simply requires the court to justify and articulate the reasons for its decision. This distinction is crucial in light of the fact that one of the main purposes for requiring post-verdict motions is to give the lower court an opportunity to correct asserted errors at that early stage without necessitating the expenditure of time and judicial energy in taking a costly appeal to the appellate courts.

*Id.* at 164. (citation omitted). *Accord, Commercial Credit Corp. v. Cacciatiore,* 343 Pa.Super. 430, 495 A.2d 540, 543 (1985) ("failure to preserve issues in post-trial documents cannot be rectified by proffering them in response to a rule 1925(b) order of court"): *Commonwealth v. Miller,* 430 Pa.Super. 297, 634 A.2d 614, 616 (1993) (only those issues included in written post-verdict motions are considered preserved for appellate review; even if those issues are raised in a 1925(b) statement, they are not preserved for appellate review).

¶ 22 In *Picker, supra,* we also reiterated the twofold purpose of post-trial motions: (1) to afford the trial court in the first instance, the opportunity to correct asserted trial errors; and (2) to clearly and narrowly frame issues for appellate review. *Picker,* 439 A.2d at 164 (citations and quotation marks omitted). Furthermore, it is important to observe that "[w]hile a concise statement of matters complained of on appeal may narrow the issues for review, it does not allow the lower court the opportunity to correct its errors because the notice of appeal has already been filed and the lower court is thereby divested of jurisdiction to act further on the case." *Id.* (citation omitted).

¶ 23 Since Appellant in the instant case, Mid–Pacific, failed to file post-trial motions, it has waived its issues for purposes of appellate review, notwithstanding the fact that these issues were raised in a 1925(b) statement. Therefore, we are constrained to quash this appeal.

¶ 24 Appeal quashed.