J-A10007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR STRUCTURED ASSET INVESTMENT LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-7 | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 1844 EDA 2022 |
| JOHN F. BEGGIN, CARLA BEGGIN AND UNITED STATES OF AMERICA | : : : : | |
| APPEAL OF: JOHN F. BEGGIN | : | |

Appeal from the Judgment Entered August 30, 2022
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2014-04007

BEFORE:   PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.:          **FILED JULY 12, 2024**

After John Beggin and Carla Beggin (collectively, "the Beggins")

defaulted on their residential mortgage, U.S. Bank National Association, as

Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through

Certificates, Series 2005-7 ("Bank") filed a complaint in mortgage foreclosure

against the Beggins in 2014. The matter ultimately proceeded to a nonjury

trial in 2022. The Beggins did not dispute that they defaulted on their

mortgage payment. Rather, they contended the Bank was not the legal owner

_____

[*] Retired Senior Judge assigned to the Superior Court.

of their mortgage and the Bank's mortgage servicer, Wells Fargo Bank ("Wells Fargo"), had fraudulently manufactured the documents purporting to establish such ownership.

Following the two-day trial, the Montgomery County Court of Common Pleas found the Beggins had defaulted on their mortgage and had not presented persuasive evidence of fraud. It also found the Bank was the owner of the mortgage and was therefore entitled to foreclose on the mortgage. The Beggins appealed, primarily recycling their claims of fraud and untrustworthy documents, and raising a multitude of claims challenging the trial court's discretion in several of its rulings regarding the admissibility of evidence. As we find the Beggins' claims are either waived or without merit, we affirm.

We borrow liberally from the trial court's recitation of the factual history of the case, which is supported by our independent review of the record. On May 20, 2005, the Beggins refinanced their mortgage for their residence in Huntingdon Valley and executed and delivered a Promissory Note ("Note") payable to Empire Mortgage Services ("Empire") in the principal amount of $340,000 and bearing an interest rate of 6.9998%. The Note was secured by a mortgage that the Beggins made, executed, and delivered to Empire ("Mortgage"). On the same day the Mortgage was executed, Empire executed a written assignment of the Mortgage to BNC Mortgage, Inc. ("Assignment 1").

On June 7, 2005, BNC Mortgage, Inc. assigned the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), its successors and assigns, as nominee for BNC Mortgage, Inc., its successors and assigns ("Assignment 2"). The Mortgage was once again assigned on May 30, 2012, this time from MERS, as nominee for BNC Mortgage, Inc., to "US Bank National Association, as Trustee for the Structured Asset Investment Loan Trust Series 2005-70" ("Assignment 3"). MERS, as nominee for BNC Mortgage, Inc., then executed a "corrective assignment" on February 18, 2014, assigning the Mortgage to "U.S. Bank National Association, as Trustee for the Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2005-7" ("Assignment 4").[1] All four Assignments were recorded with the Recorder of Deeds, although Assignment 1 and Assignment 2 were recorded out of order by one second.

The trial court found there were three signed allonges to the Note. First, there was an allonge dated May 20, 2005 and executed by "Empire Mortgage Services, Inc." to BNC Mortgage, Inc ("Allonge 1"). Second, there was an "[Allonge] to Note" also executed on May 20, 2005 by "Empire Mortgage Services," instead of "Empire Mortgage Services, Inc.," to BNC Mortgage, Inc. ("Allonge 2"). Third, there was an undated "Allonge to Note" executed by BNC Mortgage, Inc. "to the order of _____ without recourse" ("Allonge 3"). **See**

---

[1] As the trial court noted, this corrective assignment served to add the periods to "US" and "Mortgage Pass-Through Certificates" to the Bank's name.

Trial Court Opinion, 9/16/2022, at 3. As the trial court noted, the Beggins asserted there was a fourth allonge, but the trial court essentially found that there were two different copies of Allonge 2 in the record; one copy had the loan number redacted and one copy did not have the loan number redacted. *See id.* at 4 n.5. As such, the trial court found there were only three allonges.

At the time the Mortgage was executed on May 20, 2005, the servicer for the Mortgage was Option One Mortgage ("Option One"). However, Wells Fargo has been the servicer for the Mortgage since September 2005.

The Beggins failed to make their monthly payment on the Note and Mortgage that was due on June 1, 2013. They have not made any payments on the Note and Mortgage since that time.

The Bank filed a complaint in mortgage foreclosure against the Beggins on February 25, 2014. The trial court noted that the Bank's complaint included a copy of the Note as well as Allonges 1 and 2 but it did not include Allonge 3. The original Note produced during discovery and presented at trial, however, had Allonges 2 and 3 attached to the Note. *See id.* at 3-4, 5.

The case proceeded to a nonjury trial, with the Beggins representing themselves. The Bank presented the testimony of Tonya Johnson, a loan documentation specialist for Wells Fargo. Johnson confirmed that Wells Fargo has been the servicer for the Beggins' Mortgage since 2005. *See* N.T., 5/17/2022, at 75. Johnson testified about the Note, the assignments of the Note, that the Bank is in physical possession of the Note through Wells Fargo,

- 4 -

and to the two allonges attached to the original Note. *See id.* at 93-102; 112-24. The Note was admitted into evidence, along with the two allonges attached to it—the allonge from Empire Mortgage Services to BNC Mortgage, Inc. (Allonge 2) and the allonge from BNC Mortgage, Inc. to blank (Allonge 3). *See id.* at 145-46.

Over the Beggins' objection, Johnson also testified about the business records in Wells Fargo's Black Knight system, which Wells Fargo uses as a mortgage service platform for its loan servicing documents. Johnson testified about the payment history for the Beggins' Mortgage. She stated that the Beggins have not made any mortgage payments since 2013. *See id.* at 130. To date, Johnson testified, the outstanding balance on the loan was $719,668.78. *See id.* at 138.

The trial court also allowed Johnson to testify, once again over objection, about the business records Wells Fargo received from Option One, the prior loan servicer, when Wells Fargo became the loan servicer for the Mortgage.

The Beggins presented several witnesses in their attempt to establish their defense of fraud, including William Paatalo as an expert witness and Joshua Thomas and Carla Beggin as fact witnesses.

Following the trial, the court found the Beggins were in default under the Note and the Mortgage, there was no persuasive evidence that Wells Fargo committed fraud or forgery in servicing the loan, and the Bank was the holder

of the Note and assignee of the Mortgage. ***See*** Trial Court Decision, 6/7/2022, at 4-5.

The Beggins filed a 25-page motion for reconsideration, which the trial court treated as a post-trial motion and subsequently denied. The Beggins then filed a notice of appeal.[2] The trial court directed the Beggins to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Beggins filed a statement, although it is anything but concise. Rather, it is a nine-page, single-spaced document that lists statements of fact and summary conclusions of law that are interlaced with a multitude of allegations of trial court error. It is, to put it generously, difficult to discern the exact issues the Beggins sought to appeal.

In response, the trial court addressed the contentions it found the Beggins had preserved for review, including the Beggins' "main defense" that the Bank does not own the Note or the Mortgage and Wells Fargo had committed fraud. It also addressed the Beggins' claims that the trial court abused its discretion by precluding the testimony of the former Montgomery County Recorder of Deeds and permitting Johnson to testify about the documents maintained by the Black Knight system and Option One. As for the

---

[2] Upon the filing of the notice of appeal, this Court issued an order stating that no judgment had been appropriately entered on the trial court docket as required by Pa.R.A.P. 301. Following the praecipe filed by the Beggins at this Court's direction, the trial court entered the proper judgment order on August 30, 2022, and this is the order from which the appeal is taken.

contents raised in the Rule 1925(b) statement that the court did not address, the court explained:

> [The Beggins'] Statement of Errors cites numerous other procedural and evidentiary rulings by the Court, but none of these other asserted errors were raised in [the Beggins'] Post-Trial Motion. They are therefore waived on appeal. "Grounds not specified by a party in post-trial motions pursuant to Rule 227.1 are deemed waived on appellate review." ***Motorists Mut. Ins. Co. v. Pinkerton***, 830 A.2d 958, 962 n.5 (Pa. 2003)(citing [Pa.R.C.P.] 227.1(b)(2)).

Trial Court Opinion, 9/16/2022, at 19.

The Beggins now raise these five issues for our consideration:

1. Did the trial court commit error in receiving the business records of both the current and prior loan servicers into evidence over [the Beggins'] objection where the witness testimony was insufficient to meet the test as set forth by the Pennsylvania Supreme Court in ***Bayview Loan Servicing LLC v. Wicker***?

2. Should the [Bank's] action have been dismissed for want of standing and should the [Bank's] promissory notes have been excluded from evidence where, as here, the [Bank] supplied [four] separate and differing allonges each having no indicia of reliability or trustworthiness?

3. Did the trial court abuse its discretion and commit reversible error by excluding various witness testimony and excluding the admission of [the Beggins'] expert report?

4. Must this Court reverse the trial court insofar as MERS was a non-contractual interloper that frustrated the [Beggins'] capacity to trace whether the loan even entered the securitized trust?

5. Did the trial court err in finding that the [Bank] had standing where, as here, the [Bank] presented a promissory note that was not endorsed to the [Bank] and where the [Bank] filed a "corrective assignment" to create standing retroactively, failed to plead the existence of such assignment, and never moved to amend its pleading?

Appellants' Brief at 3 (suggested answers omitted).

The Beggins first contend the court erred by allowing Johnson to testify about the Beggins' payment history documents from the Black Knight and Option One systems pursuant to the business records exception to the hearsay rule. The Beggins contend Johnson did not have the requisite familiarity with the loan history documents pursuant to ***Bayview Loan Servicing LLC v. Wicker***, 206 A.3d 474 (Pa. 2019). This claim fails.

In ***Wicker***, our Supreme Court reiterated that our courts have "repeatedly emphasized that the admissibility of evidence is within the sound discretion of the trial court, which appellate courts will not disturb absent an abuse of discretion or error of law." ***Id.*** at 482 (citation omitted). ***Wicker*** involved the business records exception to the hearsay rule, which the Court stated generally requires the custodian to testify that the record was made "at or near the time of the event recorded and the record was kept in the regular course of business." ***Id.*** at 483 (citation and footnote omitted).

The specific issue in ***Wicker*** was whether the trial court had abused its discretion by allowing a records custodian to "testify to exhibits which included information recorded by a prior loan servicer under the business records exception[.]" ***Id.*** at 482. In finding it had not, the ***Wicker*** Court announced that it would:

> continue to allow our trial courts to utilize their broad discretion in evidentiary matters by applying the business records exception of [Pa.R.E.] 803(6) and the [Uniform Business Records as Evidence] Act if the witness "can provide sufficient information relating to

the preparation and maintenance of the records to justify a presumption of trustworthiness" subject to the opponent rebutting the evidence with any other circumstances indicating a lack of trustworthiness.

*Id.* at 486 (citation omitted).

Here, the Beggins contend Johnson did not have the requisite personal knowledge of the records in Wells Fargo's Black Knight system or the records maintained by Option One so as to justify a presumption of trustworthiness.

As for the records in the Black Knight system, Johnson testified that Black Knight was a program purchased by Wells Fargo for "Wells Fargo employees to access and service the loans … for Wells Fargo's customers." N.T., 5/17/2022, at 198. She also explicitly testified that the information was entered into the Black Knight system by Wells Fargo employees and not by Black Knight employees. ***See id.***

In addition, Johnson described how Wells Fargo generates a payment history. *Id.* at 125-126. She explained that Wells Fargo enters loan payments into the Black Knight system at or near the time payments are received by a person with knowledge of the payment. ***See id***.; *id.* at 199-200. She stated Wells Fargo keeps the payment history in the ordinary course of business. ***See id.*** at 129.

Based on this testimony, the trial court found the records in the Black Knight system were admissible under the business records hearsay exception as Johnson "plainly had sufficient knowledge of the Black Knight system to identity documents maintained by the system for the Beggins' loan." Trial

Court Opinion, 9/16/2022, at 16. We see no abuse of discretion in this determination. The Black Knight system is the system Wells Fargo, the current servicer of the Mortgage and not a prior loan servicer like in *Wicker*, uses as its platform for its own loan servicing documents. Johnson testified that the record is made at or near the time of the payment and is kept in the regular course of business.

As for the records from Option One, the servicer of the Mortgage from May 2005 to September 2005 and long before the Beggins defaulted on their Mortgage, Johnson testified that part of the payment history of the Beggins' loan came from the payment history received from Option One when Wells Fargo became the servicer for the Mortgage. *See* N.T., 5/17/2022, at 210. She explained that, although she did not have first-hand knowledge of how Option One did its "boarding process with its records," Wells Fargo had received the records from Option One, reviewed the records, verified the information, and incorporated them into their own records when the loan service was transferred to Wells Fargo. *Id.*

The trial court cited this testimony and stated that it had properly exercised its discretion when it found Johnson provided sufficient information under the *Wicker* test to testify to the contents of the Option One records. The court specifically noted that the Beggins had not presented any evidence, "through cross-examination or otherwise, to cast doubt upon the trustworthiness of the Option One records on which [Johnson] relied." Trial

Court Opinion, 9/16/2022, at 17. This continues to be true on appeal. We therefore find no abuse of discretion in the trial court's decision to allow Johnson to testify about the Option One payment history pursuant to **Wicker**.

In their next issue, the Beggins essentially contend the Bank is not the owner of the Note because the allonges attached to the Note were inauthentic. According to the Beggins, the copy of the Bank's Note in its complaint had two allonges attached to it but the Bank then did a "switcheroo" by abandoning these two allonges and replacing them with two "better" allonges in an attempt to establish that the Bank was indeed the owner of the Note. Appellant's Brief at 26, 45. The later production of these two new allonges, which the Beggins contend are different from those in the pleadings, is, the Beggins insist, "effectively an admission to a lack of ownership." **Id.** at 37. This claim is without merit.

In rejecting this claim below, the trial court explained:

[The Beggins] argue that the copy of the Note that was attached to [the Bank's] Complaint contained only Allonge #1 and Allonge #2, which endorsed the Note over to BNC Mortgage, Inc. It was only during the discovery process that U.S. Bank produced Allonge #3, purporting to endorse the Note from BNC Mortgage, Inc., "to the order of _____" (the bearer). And, they argue, the original Note produced in discovery—and at trial—contained Allonge #2 and Allonge #3, but not Allonge #1. These inconsistencies, they contend, show that Allonge #3 was fabricated when, during the course of litigation, Wells Fargo discovered that it had not properly documented ownership of the Note by the [Bank].

[The Bank] responds that the attachment to the Complaint of Allonge #1 and Allonge #2, rather than Allonge #2 and Allonge #3, was a simple clerical error, corrected when [the Bank] retrieved the original document in the course of discovery. [The

- 11 -

Bank] note[s] that it would have been natural and in accordance with routine practice to endorse over the Note, through an allonge, at the same time that an Assignment of the Mortgage was executed and recorded. Most fundamentally, [the Bank] point[s] to the testimony of Tonya Johnson, Wells Fargo's custodian of records, who testified that the Note, with Allonge #2 and Allonge #3, was in the records of Wells Fargo for the Beggin loan, maintained in the ordinary course of business.

After considering all the evidence, the Court found that U.S. Bank's interpretation of the evidence was more convincing. The failure to include Allonge #3 in the copy of the Note attached to the Complaint is not definitive evidence of fraud. It more likely reflects an inattention to detail by the law firm that originally represented [the Bank] in this matter or by [a Bank] representative working with that law firm—a regrettable but all-too-frequent occurrence in mortgage foreclosure cases. Sloppiness is not to be condoned, but it is not the equivalent of fraud. Of course, the possibility cannot be absolutely ruled out that Allonge #3 was fraudulently manufactured during the course of the litigation, but in the absence of persuasive evidence of fraud, a clerical error is the more likely interpretation of the evidence.

Trial Court Opinion, 9/16/2022, at 5-6.

The court therefore found that, "although it had given [the Beggins] a wide berth at trial to prove their assertions of fraud," the Beggins had not established their allegation of fraud by clear and convincing evidence. *Id.* at 5; *id.* at 5 n.4 (citing **Greenwood v. Kadoich**, 357 A.2d 604, 606 (Pa. Super. 1976) (stating that whether fraud has been committed is a question for the factfinder and an allegation of fraud must be proven by clear and convincing evidence)). The Beggins do not even address the trial court's analysis in their appellate brief. And we find no error on the trial court's part, especially when the trial court's conclusion is explicitly based on its weighing of the evidence

and which explanation it found, as the factfinder, more compelling. "[T]his Court may not reweigh the evidence or substitute its judgment for that of the trial court [in a nonjury trial]." **Snyder v. Crusader Servicing Corp.**, 231 A.3d 20, 28 (Pa. Super. 2020) (citation omitted). No relief on this claim is due.

In their third issue, the Beggins argue the trial court abused its discretion by refusing to admit the two expert reports prepared by its expert witness, William Paatalo, as well as the affidavit of Joshua Thomas, and by precluding the testimony of the former Montgomery Recorder of Deeds, Nancy Becker. The first two claims are waived and the third claim lacks merit.

The Beggins first contend the trial court erred by denying the admission of Paatalo's expert reports. The trial court did not address this issue in its Rule 1925(a) opinion as the Beggins failed to raise the issue of the court's failure to admit Paatalo's expert reports in their post-trial motion. As the trial court indicated, "Pa.R.C.P. 227.1 requires parties to file post-trial motions in order to preserve issues for appeal." **Diamond Reo Truck Co. v. Mid-Pacific Indus., Inc**., 806 A.2d 423, 428 (Pa. Super. 2002) (citation omitted). Indeed, "[e]ven when a litigant files post-trial motions but fails to raise a certain issue, that issue is deemed waived for purposes of appellate review." **Id**. (citation omitted). The Beggins do not respond in any way to the trial court's finding of waiver, instead ignoring this threshold issue and arguing only the merits of their claim. However, we cannot reach the merits of a claim not preserved for

review. And, while we recognize the Beggins did raise this issue in their Rule 1925(b) statement, this does not excuse the failure to preserve the issue in post-trial motions. ***See id.*** at 429.

The Beggins also baldly assert that the trial court erred by excluding the affidavit of Joshua Thomas. Again, this claim is waived. Although the Beggins asserted in their 1925(b) statement that the court erred by precluding Thomas's "expert testimony," the statement does not raise an allegation pertaining to the admission of an affidavit by Thomas. ***See Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) (stating that any issues not raised in a Rule 1925(b) statement are waived). Even if not waived for that reason, we would find it waived for lack of development. The Beggins fail to provide any context for this claim or cite any legal authority in support of it. ***See Commonwealth v. Rahman***, 75 A.3d 497, 504 (Pa. Super. 2013) (stating that if an appellant does not meaningfully discuss a claim with citation to relevant authority it is waived).

As for their last claim included in this issue, the Beggins claim the court abused its discretion by precluding the former Montgomery County Recorder of Deeds, Nancy Becker, from testifying about her experience with the MERS System. This claim fails.

Although not explained by the Beggins, our Supreme Court has described the MERS System as follows:

> [T]he MERS System® [is] a national electronic registry system for promissory notes associated with mortgages and secured by

residential real estate. The MERS® System permits its members to transfer promissory notes associated with mortgages between and among its financial institution members. After a member-to-member transfer of a note, MERS remains the mortgagee and title holder of record as a "nominee" for the holder of the promissory note and its successors and assigns. Under this system, MERS facilitates operation of the secondary market for mortgages by enabling its members to transfer the right to repayment on the note associated with a mortgage to other members by recording the transfers only in the MERS database… As a result, county recording fees may be avoided by MERS Members.

***MERSCORP, Inc. v. Delaware County***, 207 A.3d 855, 858 (Pa. 2019).

In **MERSCORP**, the Court considered the claim by recorders of deeds from various counties that the MERS System violated public policy as well as the statute providing that the conveyance of land "shall be recorded" in the county where the land is situated. ***See id.*** at 859, 862. The Court held that, contrary to the recorders' claims, the statute did not impose a mandatory duty to record mortgages and mortgage assignments in a county office for the recorder of deeds. ***Id.*** at 858, 870-71. As such, the Court effectively found MERS was not required to record its members' assignments of promissory notes for which MERS was mortgagee and title holder as nominee for the note holder in county recording offices.

As noted above, the Beggins wanted to present Becker as a witness to testify about her experience with MERS as a county recorder of deeds. Specifically, in their offer of proof, the Beggins told the court that Becker would testify as to "what she saw [with MERS] as a Recorder of Deeds," and that she

saw "MERS took over a law—an understanding that we all had that you recorded things in deeds." N.T., 5/18/2022, at 146.

The court then asked the Beggins for the testimony's relevance in light of **MERSCORP**. The Beggins responded, in effect, that the testimony was relevant as it would address how MERS makes it difficult for homeowners, such as the Beggins, to track mortgage assignments or to research fraud. **See** **id.** at 147.

The trial court disagreed and ruled the testimony was irrelevant in light of **MERSCORP**. It stated that:

> **MERSCORP** was dispositive of [the Beggins'] argument that the MERS recording is fraudulent or otherwise illegitimate. Their argument is directly contrary to the opinion of the Supreme Court, which specifically considered and rejected the contention that public policy requires the public recording of mortgage assignments.

Trial Court Opinion, 9/16/2022, at 13-14.

While the Beggins assert the trial court "missed the point" when it relied on **MERSCORP** to preclude Becker's testimony because they were not specifically raising a public policy argument, the fact remains that the Beggins proffered that they was offering Becker to testify in support of their argument that the MERS system infringes on homeowners' ability to track their mortgage assignments, which sounds in public policy, and the Court in **MERSCORP** ultimately found the MERS system to be lawful and not violative of public policy. The Beggins have simply failed to persuade us that the trial court abused its discretion by precluding Becker's testimony as irrelevant. **See**

- 16 -

*Wicker,* 206 A.3d at 482 (stating an appellate court will only disturb a trial court's evidentiary ruling if there has been an error of law or an abuse of discretion, which is not a mere error in judgment but requires demonstration of bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of the law).

In their fourth issue, the Beggins' argument is difficult to follow and touches on a wide variety of allegations of fraud, but their main contention, and the only one that is included in their statement of questions presented, appears to be that the Bank could not have obtained ownership of the mortgage from MERS because "MERS is not mentioned nor contemplated by the plain language of [the Beggins'] mortgage." Appellant's Brief at 51. They further contend that:

> The unilateral modification of the [Beggins'] mortgage whereby MERS suddenly appears as an interloper had the effect of securitizing the loan without notice to nor consent of the Beggins. The Homeoners had every right to expect that the law of Pennsylvania would be followed at the time they signed the mortgage in 2005. The Beggins believed and reasonably expected that they would be able to track their mortgage through any list of successors to see who owned it at any time.

*Id.* at 52.

The trial court did not address this particular issue, though it was arguably raised in the Beggins' post-trial motion and their Rule 1925(b) statement. However, we find the issue is nonetheless waived because the Beggins cite no caselaw to support their contention. *See Rahman*, 75 A.3d at 504. We add that, giving the Beggins the benefit of a broad interpretation

- 17 -

of their argument, it appears the Beggins are once again attempting to attack the legality of the MERS system, which, as discussed above, our Supreme Court has found to be lawful.

In their final issue, the Beggins maintain, in essence, that the Bank lacks standing to foreclose because the corrective assignment, Assignment 4, of the Mortgage is not referenced in the complaint. According to the Beggins, this violated Pa.R.C.P. 1147(a), which requires a mortgage foreclosure plaintiff to plead "the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments[.]" Pa.R.C.P. 1147(a)(1). However, as the Bank argues, this is the first time the Beggins have raised Rule 1147(a)(1) and the issue has therefore not been preserved for our review. **See** Pa.R.A.P. 302(a) (providing that "issues not raised in the trial court are waived and cannot be raised for the first time on appeal").

As we conclude the Beggins' claims are either waived or fail to establish the trial court erred or abused its discretion, we affirm the judgment in mortgage foreclosure.

Judgment affirmed.

Judge Beck joins the memorandum.

Judge Colins did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/12/2024